George W. Loomis et al., Plaintiffs in Error, *v.* The People of the State of New York, Defendants in Error.

Where two persons conspire together, fraudulently, to get possession of the money of another, with a felonious intent to convert it to their own use, and, by means of a fraudulent contrivance or device, succeed in inducing the owner to deliver the temporary possession thereof for a specific purpose, and then, without his consent and against his wishes, convert the same to their own use, they are guilty of larceny.

Upon the trial of an indictment for larceny, it appeared that Lewis, one of the prisoners, made the acquaintance of Olason, the prosecutor, and, under the pretence that he had a check for $500 he desired to get cashed at a bank, invited Olason to go with him; he led him into a saloon, where was the prisoner Loomis, whom the evidence showed to be a confederate of Lewis. Lewis proposed to Loomis to throw dice; they did so for five dollars, and Loomis lost; they then proposed to throw for $100. Lewis asked Olason to lend him ninety dollars, saying, "I am sure to beat him again, and you can have your money back. If I do lose I have got the check for $500, and we will go up to the bank and get the check cashed and you can have the money." Olason let him have the ninety dollars; the dice were thrown and Lewis lost. Olason insisted on the return of his money; the purported check was then put up against $100, and Lewis again lost; Loomis and Lewis thereupon went away. The court charged the jury, in substance, that if satisfied beyond a reasonable doubt that the two prisoners conspired fraudulently and feloniously to obtain the complainant's money, and to convert it absolutely without his consent and against his will, they could convict of larceny. *Held*, no error; and that the evidence was sufficient to sustain a conviction.

(Argued October 2, 1876; decided November 21, 1876.)

Error to the General Term of the Supreme Court in the first judicial department to review judgment affirming a judgment of the Court of General Sessions in and for the city and county of New York, entered upon a verdict convicting plaintiffs in error of the crime of larceny.

The prisoners were indicted for stealing the sum of ninety dollars, the property of Christian Olason. He was on his way from Nebraska to Hamburgh, in Germany, and took the train from Philadelphia to New York, in the

progress of his journey.   The prisoners were passengers on
the same train, and Lewis, one of them, engaged Olason in
conversation soon after the train left the station, and con-
tinued in his company until they arrived in New York; there,
at his suggestion, they both went to a boarding-house or hotel,
known to Lewis, where he and Olason left their valises, and
Olason also left a box he had.   Then, at the instance of
Lewis, they went out for a walk, and he informed Olason that
he had a check for $500 which he desired to have cashed, and
went to a building he said was a bank for that purpose.   This
was before banking hours, and he told Olason that as the
bank would not be open until half-past nine they would  take
another walk, which they did, and it ended by Lewis taking
Olason into a saloon, where they found Loomis standing by
the bar.   Lewis then asked for two segars, for which he
offered payment with a five dollar bill.   The bartender could
not change it, and the prisoners agreed to throw dice for the
segars, which they did, and Lewis lost.   Then they threw
dice for five dollars, and Loomis lost it.   Lewis proposed
to divide that with Olason, but he declined to have any
thing to do with it.   Then Loomis put up what was called
$100, and Lewis had ten, and applied to Olason for ninety more,
so that he could put up the same amount on his part, saying
" I am sure to beat him again, and you can have your money
back.   If I do lose I have got the check for $500, and we
will go to the bank and get the check cashed, and you can
have the money."   Olason thereupon let him have the money.
The dice were thrown, and the money won by Loomis.   Olason
demanded his money back; Lewis asked him to let him have
$100 more, which he refused.   After that Loomis put up $100
against what had been represented by Lewis as the check for
$500, and that was won by Loomis.   Lewis then declared himself
not worth a cent, and he and Loomis soon afterwards dis-
appeared.   Olason saw no more of them until after their arrest,
which was made in a few days on the same train.   Loomis was
searched and found to have a package marked on the outside
$500, made up of a one dollar national currency bill, a five

dollar note of the Citizen's Bank, a Confederate States twenty-dollar bill and pieces of brown paper inside. He had also five metal worthless pieces each representing a twenty dollar coin. And the other prisoner, Lewis, had a pack of three-card monte cards.

The prisoners' counsel asked the court to charge that there was not sufficient evidence to warrant a conviction. The court refused so to charge, and said counsel excepted.

The court charged, among other things, as follows :

" If you are satisfied from the evidence, beyond any reasonable doubt, that the two prisoners conspired fraudulently and feloniously to obtain the complainant's money and convert it absolutely to their own use without his consent, and that in pursuance of such conspiracy they did feloniously and fraudulently obtain from the complainant the ninety dollars by the means and in the manner and under the circumstances testified to by the complainant with the intention of converting the money absolutely to their own use without his consent and against his will, and that the complainant did not intend to part with his ninety dollars absolutely but only for a short time and only until Lewis could get the check or pretended check cashed, I think you can and ought to convict the prisoners of grand larceny, otherwise that you should acquit the prisoners."

To which the prisoners' counsel duly excepted.

*William F. Kintzing* for the plaintiffs in error. The court erred in charging the jury that they could convict the accused of larceny. (*Hildebrand* v. *People,* 56 N. Y., 396; *Smith* v. *People,* 53 id., 111; *McDonald* v. *People,* 43 id., 61; *Kelly* v. *People,* 13 N. Y. Sup. Ct. R., 509; *Wolfstein* v. *People,* id., 121; *Weyman* v. *People,* 11 id., 511; *Rex* v. *Hunt,* 8 Cox Cr. Cas., 495; *Lewer* v. *Comm.,* 15 S. & R., 93; Roscoe's Cr. Ev. [7th ed.], 626–636; Whart. Am. Cr. L. [5th rev. ed.], 1780; *Comm.* v. *James,* 2 B. & H. Ldg. Cr. Cas. [2d rev. ed.], 181, 204; 2 East's Pleas of Crown, 668; *Blunt* v. *Comm.,* 4 Leigh, 689; *Rex* v. *Jackson,* 1 Moody C. C., 119;

*Mowery* v. *Walsh*, 8 Cow., 228 ; *Requa* v. *Barnes*, 2 Den. C. C., 59 ; *Reg.* v. *Thomas*, 9 C. & P., 741 ; *Reg.* v. *Adams*, 1 Den. C. C., 38 ; *Rex* v. *Adams*, R. & R. C. C., 225 ; *Rex* v. *Nicholson*, 8 East P. C., 669 ; 2 Leach, 610 ; 2 Russ. on Crimes [6th ed.], 35 ; Arch. Cr. Pldgs., 895 ; *Abrams* v. *People*, 13 N. Y. Sup. Ct. R., 491.) The intent to steal the goods must exist when it cometh to the hands or possession. (*People* v. *Wilson*, 39 N. Y., 460 ; *People* v. *Anderson*, 14 J. R., 294 ; *People* v. *Call*, 1 Den., 120 ; 3 Coke's Inst., 107 ; 1 Leach, 411 ; *Rex* v. *Leigh*, 2 East's Pleas of the Crown, 553, 694 ; *Rankin's Case*, R. & R., 44 ; 1 Hale's Pleas of the Crown, 504 ; 1 Hawk. P. C., chap. 33, § 2 ; 4 Black. Com., 232 ; Rosc. Cr. Ev., 533, 541 ; Barb. Cr. L., 153 ; Whart. Am. Cr. L. [5th ed.], 1752 ; Arch. Cr. Pldgs., 186, 188 ; 2 Stark. Ev., 606.) There was no trespass in taking the property, and without it there could be no larceny. (*McDonald* v. *People*, 43 N. Y., 61 ; 56 id., 396 ; 1 Hawk. P. C., § 1, p. 208 ; 2 Russ. on Cr. [6th ed.], 35 ; *Reg.* v. *Middleton*, 12 Cox Cr. Cas., 269 ; 2 Bish. Cr. L. [5th ed.], 812 ; 1 Hale P. C., 504, 509 ; 1 Hawk. P. C., § 9, p. 209 ; 9 C. & P., 741 ; 38 E. C. L. R., 314.) There can be no larceny if there was intended to be either trust or confidence reposed in the accused. (56 N. Y., 396 ; 6 C. & P., 405 ; *Rex* v. *Oliver*, 4 Taunt., 274 ; *Rex* v. *Rodway*, 9 C. & P., 350 ; *Rex* v. *Patch*, 1 Leach, 748 ; *Nicholson's Case*, 2 id., 610.)

*Benj. K. Phelps;* district attorney, for the defendants in error. The plaintiffs in error were properly convicted of larceny. (*Smith* v. *People*, 53 N. Y., 111 ; *Hildebrand* v. *People*, 56 id., 394 ; *Kelly* v. *People*, 13 N. Y. Sup. Ct. R., 509 ; *Rex* v. *Horner*, 1 Lead. C. C., 270 ; *Rex* v. *Robson*, R. & R. C. C., 413 ; *Reg.* v. *Johnson*, 5 Cox C. C., 372.)

MILLER, J. The prosecutor was induced to place his money upon a game of hazard upon the assurance of Lewis, one of the prisoners, that he was to win, and he would have his money back, or that in case of loss other money would be procured

upon a check which Lewis claimed to have in his possession, and paid in place of that lost.

It is evident that the prisoner Lewis and his confederate Loomis conspired fraudulently and feloniously to procure the money of the prosecutor, and by means of a trick and device succeeded in converting it to their own use. Upon the facts proven, the question to be determined is, whether a case of larceny is established. The jury have found that it was the intention of the prisoners to convert the money without the consent, and against the will of the prosecutor, and that he did not intend to part with his property. I think that the conclusion at which they arrived was abundantly warranted by the evidence, and the conviction of the prisoners can be upheld upon well-established legal grounds.

It is contended that the conviction was erroneous, because the prosecutor voluntarily parted with his money, not expecting to receive back the same bills, but others in their place, and hence the crime was not made out. It must be conceded that, in order to established the offence of larceny, there must be a trespass, and without this element the offence is not complete. (1 Hawk. Pl. Cr., § 1, p. 108 ; 2 Russ. on Crimes [5th Am. ed.], 95 ; *McDonald* v. *The People*, 43 N. Y., 61 ; *Hilderbrand* v. *People*, 56 id., 394.) Even although the owner is induced to part with his property by fraudulent means, yet if he actually intends to part with it, and delivers up possession absolutely, it is not larceny. (*People* v. *Smith*, 53 N. Y., 111.)

In this case, considering the circumstances, it cannot be deemed, we think, that the prosecutor intended to part with the possession or the ownership of the money. It was handed over for a particular purpose, with no intention to loan it, or absolutely to surrender the title, and it was only in case of its loss that other money was to be procured upon the check, which the prisoner Lewis claimed to have in his possession. The prosecutor then had parted with no absolute right to the same, nor transferred any title to the bills before the contingency of the loss occurred, and the use of the money was but

temporary, and for a specified object. Certainly, when it appeared that no loss had happened, the temporary possession was at an end, and to all intents and purposes the money reverted to the prosecutor. The alleged loss, brought about by the criminal and fraudulent conduct of the prisoners, could not change the title, or in any way transfer the ownership to them. They did not thereby acquire any right, and it cannot seriously be questioned that at this time, if not before, the prosecutor would have been justified in taking the money forcibly, or could have maintained an action for the recovery of the same identical bills. It was his money, and the conversion of it by the prisoners, before it was won, was without a semblance of lawfully authority, and, as the jury have found, with a felonious intent.

It was a clear case of larceny, as marked and significant in its general features as if the prisoners had wrongfully seized and appropriated it when first produced. The form of throwing the dice was only a cover; a device and contrivance to conceal the original design, and so long as there was no consent to part with the money, does not change the real character of the crime. While the element of trespass is wanting and the offence is not larceny, where consent is given, and the owner intended to part with his property absolutely, and not merely with a temporary possession of the same, even although such consent was procured by fraud, and the person obtaining it had an *animus furandi*, yet as is well said by a writer upon criminal law :

" It is different where, with the *animus furandi*, a person obtains consent to his temporary possession of property, *and then converts it to his own use*. The act goes farther than the consent, and may be fairly said to be against it. Consent to deliver the temporary possession is not consent to deliver the property in a thing, and if a person, *animus furandi*, avail himself of · a temporary possession for a specific purpose, obtained by consent to·convert the property in the thing to himself and defraud the owner thereof, he certainly has not the consent of the owner. He is, therefore, acting against

the will of the owner, and is a trespasser, because a trespass upon the property of another is only doing some act upon that property against the will of the owner."

In the case at bar there was no valid agreement to part with the money absolutely, and no consent to divest the owner of his title. It was passed over for a mere temporary use at most, and the legal title remaining in the owner, the conversion of it by the prisoners within the rule cited was larceny. The reports are full of familiar illustrations of this rule, as a reference to some of the leading cases will show.

In *Hildebrand* v. *The People* (*supra*), a fifty-dollar bill delivered to the prisoner to pay ten cents and return the change, was kept by him, and it was held to be larceny. It was intended that after taking out the ten cents other money should be exchanged, and to this extent and for this purpose the prisoner had lawful possession of the money. In that case, as here, the money was not absolutely parted with, but surrendered for a specific purpose and the custody temporarily transferred. It is true that in the case last cited, the delivery was held not to be complete until the change was returned, but that does not alter the principle when there was but a temporary possession, as there was no transfer of the ownership. (See, also, *McDonald* v. *The People, supra.*) Nor does it change the aspect of the case, when by trick or device the owner is induced to part with the custody or naked possession of property for a special purpose to one who receives it *animus furandi*, and still means to retain a right of property. (*Smith* v. *The People*, 53 N. Y., 111.) In *Rex* v. *Horner* (1 Leach, 305), where the prosecutor was decoyed into a public house and money obtained from him for the purpose of playing at cards, and appropriated by the prisoner, it was held that if there was a preconcerted plan to obtain the money, and an *animus furandi*, it was felonious. This case is analogous and directly in point, and it is difficult to draw any distinction between the case cited and the case at bar, as there was quite as strong ground for finding the felonious intent in the latter case as in that cited. In *Rex* v. *Robson* (R. & R., C. C., 413),

where there was a plan to cheat the prosecutor out of his property under color of a bet, and he parted with the possession only to deposit it as a stake with one of the confederates, the taking was held to be felonious. This case is directly in point, and as a decision by the twelve judges is entitled to great weight. The cases referred to without citing others which bear in the same direction are sufficient to sustain the conviction, and the cases which have been cited as upholding the principle that there was no such parting with the property as to constitute larceny, do not, I think, go to the extent which is claimed. After a careful examination, without considering them in detail, suffice it to say, that perhaps a single exception (*Reg.* v. *Thomas*, 9 C. & P., 741), which was a *nisi prius* decision, and is criticised in the opinion in *Hildebrand* v. *The People*, they are all clearly distinguishable from the case now considered, and the weight of authority is decidedly in an opposite direction.

There is, to be sure, a narrow margin between a case of larceny and one where the property has been obtained by false pretences. The distinction is a very nice one, but still very important. The character of the crime depends upon the intention of the parties, and that intention determines the nature of the offence. In the former case, where by fraud, conspiracy or artifice, the possession is obtained with a felonious design, and the title still remains in the owner, larceny is established. While in the latter, where title, as well as possession, is absolutely parted with, the crime is false pretences. It will be observed that the *intention* of the owner to part with his property is the gist and essence of the offence of larceny, and the vital point upon which the crime hinges, and is to be determined. Although the present case is on the border line, yet it is quite clear that it was, as the evidence stood, a fair question for the jury to decide as to the intent of the prisoners feloniously to take the money, and as to the intention of the prosecutor to part with the ownership of the same.

These questions were fairly submitted by the judge to their

consideration, and as there was no error in the charge, or in any other respect on the trial, the conviction must be affirmed.

All concur; RAPALLO, J., absent.

Judgment affirmed.