[No. 20,062. In Bank.—February 11, 1885.]

THE PEOPLE, RESPONDENT, v. ROBERT RAE, APPELLANT.

CRIMINAL LAW—LARCENY AND FALSE PRETENSES DISTINGUISHED.—When by means of fraud, conspiracy, or artifice, possession of property is obtained with felonious intent, and the title still remains in the owner, the crime is larceny; but if the title as well as the possession is parted with, the crime is that of obtaining property by false pretenses.

ID.—*Held*, that the circumstances of this case establish the crime of larceny.

APPEAL from a judgment of the Superior Court of the county of Sacramento, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*S. Solon Holl*, for Appellant.

*Attorney-General Marshall*, for Respondent.

Ross, J.—The defendant was convicted of the crime of grand larceny, under an information filed by the district attorney charging him with that offense. What he did was this : In company with a confederate, who passed by the name of Turner, he boarded an emigrant train of the Central Pacific Railroad Company, and engaged the prosecuting witness, who was a passenger on the train, in conversation. He represented himself to be a dealer in furs, and said he was traveling on the emigrant train because of the convenience it afforded him of stopping along the route for the transaction of his business. He asked the prosecuting witness if he knew a Mr. Turner of the firm of Turner & Co., of Boston, and told him he had telegraphed Turner to meet him at the point the train then was, but had not seen him. Just as the prosecuting witness answered that he did not know such a man, the pretended Turner opportunely appeared in the car, when the defendant looked up and said, " Oh, here is the gentleman, coming now." Defendant introduced his confederate to the prosecuting witness. The confederate then said to the defendant, " I got your telegram and I have got your goods all fixed up." Defendant replied, " I am very glad—how are you sending them—by express ? " The confederate replied, " Yes, by express. No, by transfer ; they will not touch any, unless prepaid." Defendant then produced two currency notes, saying that was all the change he had, and that he did not know how he was going to arrange the matter, unless Turner could change " this bill "—at the same time producing what bore a slight resemblance to a United States bond for one thousand dollars, with coupons attached. Turner said he could not change it, when defendant asked the prosecuting witness how much money he had, who replied that he had about one hundred dollars or so. Defendant then said he was in a bad fix and did not know what he was going to do, and then asked the prosecuting witness to let him, defendant, have what money he had, until he (defendant) could go to the baggage-car and get what money he wanted, and that they could settle up as they went along—at the same time offering the prosecuting witness the pretended bond as temporary security. In response to that request, the prosecuting witness handed defendant one hundred and sixty dollars of his money ; and de-

fendant, saying that he would be back in half an hour, and ask-
ing the prosecuting witness to retain his seat for him in the
meantime, left the car.    Of course, instead of returning, he left
the train with the money and his confederate.

It is claimed for the appellant that the offense thus com-
mitted was not larceny, but the obtaining of money by means
of false pretenses.    The distinction between the two crimes is
sometimes very narrow, but yet it is well defined.    Where, by
means of fraud, conspiracy, or artifice, possession of the property
is obtained with felonious intent, and the title still remains in
the owner, larceny is established.    While the crime is false pre-
tenses, if the title, as well as the possession, is absolutely parted
with.    No one, we presume, would seriously deny the sufficiency
of the evidence to justify the finding of a felonious intent on
the part of the defendant in taking the money in question.    And
under the circumstances of the case, there can be as little doubt
of the proposition that there was no intention on the part of the
prosecuting witness to part with his ownership of the money.
The criminal and fraudulent conduct of the defendant and his
confederate in no way operated a transfer of the title to them,
or either of them, or at all changed the ownership of the money.
It remained the money of the prosecuting witness.    In *Common-
wealth* v. *Barry*, 124 Mass. 325, there was evidence that as A was
passing a bar-room, the defendant, a girl, called him in, and he,
at her request, gave her money to buy a bottle of brandy.    They
went upstairs together, and she said this bottle would not be
enough for the night, and asked for more money with which to
buy another bottle.    A thereupon gave her a twenty-dollar bill
to get a quart of brandy, the price of which was three dollars,
not expecting to receive the bill back, but the change, after de-
ducting the price of the brandy.    The defendant went out, and
soon returned with another girl, saying she could not get it.
The other girl said she knew where to get it, and the two girls
went out, and he saw no more of them or his money.    Upon
this evidence the Supreme Court of Massachusetts had no diffi-
culty in holding the defendant properly convicted of larceny.
In principle, that case is like that now here.    Still closer as re-
spects the facts, and therefore more directly in point, is the case
of *Loomis et al.* v. *The People*, 67 N. Y. 322.    There it ap-

peared that Lewis, one of the prisoners, made the acquaintance of Olason, the prosecutor, and under the pretense that he had a check for five hundred dollars he desired to get cashed at a bank, invited Olason to go with him. He led him into a saloon, where was the prisoner Loomis, whom the evidence showed to be a confederate of Lewis. Lewis proposed to Loomis to throw dice; they did so for five dollars, and Loomis lost. They then proposed to throw for one hundred dollars. Lewis asked Olason to lend him ninety dollars, saying, "I am sure to beat him again, and you can have your money back. If I do lose, I have got the check for $500, and we will go up to the bank and get the check cashed, and you can have the money." Olason let him have the ninety dollars; the dice were thrown,. and Lewis lost. Olason insisted on the return of his money. The purported check was then put up against $100, and Lewis again lost. Loomis and Lewis thereupon went away. The court charged the jury in substance, that if satisfied beyond a reasonable doubt that the two prisoners conspired fraudulently and feloniously to obtain the complainant's money, and to convert it absolutely without his consent and against his will, they could convict of larceny; and it was held on appeal no error, and that the evidence was sufficient to sustain the conviction— the court observing: "It was a clear case of larceny, as marked and significant in its general features as if the prisoners had wrongfully seized and appropriated it when first produced. The form of throwing the dice was only a cover; a device and contrivance to conceal the original design, and so long as there was no consent to part with the money, does not change the real character of the crime. While the element of trespass is wanting, and the offense is not larceny, where consent is given, and the owner intended to part with his property absolutely, and not merely with a temporary possession of the same, even although such consent was procured by fraud, and the person obtaining it had an *animus furandi*, yet, as is well said by a writer upon criminal law: ' It is different where, with the *animus furandi*, a person obtains consent to his temporary possession of property, *and then converts it to his own use*. The act goes farther than the consent, and may be fairly said to be against it. Consent to deliver the temporary possession is not consent to

deliver the property in a thing, and if a person, *animus furandi*, avail himself of a temporary possession for a specific purpose, obtained by consent, to convert the property in the thing to himself, and defraud the owner thereof, he certainly has not the consent of the owner. He is, therefore, acting against the will of the owner, and is a trespasser, because a trespass upon the property of another is only doing some act upon that property against the will of the owner.' In the case at bar, there was no valid agreement to part with the money absolutely, and no consent to divest the owner of his title. It was passed over for a mere temporary use at most, and the legal title remaining in the owner, the conversion of it by the prisoners within the rule cited was larceny. The reports are full of familiar illustrations of this rule, as a reference to some of the leading cases will show." And the court proceeded to refer to many of them, which may be consulted by turning to the case from which this extract is taken.

Judgment and order affirmed.

MYRICK J., THORNTON, J., and MORRISON, C. J., concurred.

SHARPSTEIN, J., dissenting.—I dissent. In *Smith* v. *The People*, 53 N. Y. 111, the New York court of appeals says : "If by trick or artifice the owner of property is induced to part with the custody or *naked* possession to one who receives the property *animo furandi*, the owner still meaning to retain the right of property, the taking will be larceny; but if the owner part with not only the possession, but the right of property also, the offense of the party obtaining them will not be larceny, but that of obtaining goods by false pretenses." In an earlier case the same court said : " The only question remaining in any case is whether the taking was with the consent of the owner ; for if so, although the consent was obtained by gross fraud, there is no larceny." (*Bassett* v. *Spofford*, 45 N. Y. 387.)

And Bishop says : " Where the consent is as broad as the taking, going to the relinquishment of the ownership in the property, it is effectual, though obtained by fraud ; in other words, by reason of the consent, even when procured by fraud, there is still no trespass, therefore no larceny." (2 Crim. Law, 811.)

It is claimed in this case that the prosecuting witness did not consent to part with his right of *property* in the money which he parted with the *possession* of. The bill of exceptions shows that when testifying he was asked, "You thought that Morgan (defendant) wanted to pay Turner what he owed him?" Answer. "Yes."

Question. "You loaned him this $160, for the purpose of Morgan (defendant) paying Turner?"

Answer. "Yes, that was the idea."

In the absence of fraud, I think his intention to part with the property in the money would be too clear to admit of doubt. He in effect says, that he lent the money to the defendant, understanding at the time that defendant was to pay it to a third person to whom he, defendant, was indebted. To say that the owner of the money intended to part with his property in the money if the representations made to him were true, but to retain his property in it if they were not, is in effect saying that if his consent to part with it was obtained by fraud he never consented, which is inconsistent with the doctrine that if the consent be obtained by gross fraud there is no larceny. And Bishop says this doctrine is too firmly established by the authorities to be overthrown by judicial power. (2 Crim. Law, 808.) But the court below in effect instructed the jury that if the consent of the owner to part with his property was obtained by fraud, the fact of such consent being given was quite immaterial. That consent, so obtained, was not consent.

After giving the jury the code definition of larceny, the court proceeded: "When a person obtains property, whether it is money or other property, by artifice, stratagem, deceit and fraud, it would be stealing within the meaning of this statute. If it is done with intent at the time to obtain it, and to appropriate it to his own use, and to defraud the party of it, it is stealing when artifice and fraud are resorted to for the sole purpose of getting possession of the property. * * * Such artifice, stratagem, deceit and fraud, that so obstruct the reason of men that they cannot be said to consent, amounts to stealing, because the title of property does not pass from one man to another except by his consent; and as is said by Justice Baldwin of our former Supreme Court, in the case of *Butler* v. *Collins*, 12 Cal. 457,

'consent requires something more than a mere formal act of the mind'; and I will read to you what he says, and will charge you that that is the law of this State: 'But consent in law is more than a mere formal act of the mind. It is the act unclouded by fraud, duress, deceit,' and stratagem."

But in *Butler* v. *Collins*, the court also said that the obtaining of goods by such means would be obtaining them by *false pretenses*, which is a different and distinct offense from larceny. And it is only by wholly ignoring the distinction that this charge can be sustained.

The charge confounds the case of obtaining the mere naked possession of property, with that of obtaining the property itself.

The court was requested by the defendant to give the following instruction:

"If you find from the evidence, that the money which is the subject of the alleged larceny in this action was obtained by defendant from the prosecuting witness Hollet; and that the said Hollet voluntarily gave the money to the defendant; and that he (Hollet) did not expect to get any part of this money back from the defendant; and that at the time the money was so obtained, it was understood by the said Hollet that said money was to be used by the defendant on his own account, and not on account of or for the benefit of said Hollet; then the defendant is not guilty of larceny, and you must acquit him of the crime charged in this information, even though you should find that the defendant fraudulently obtained the money by means of false pretenses."

The court gave only so much of it as precedes the words, "even though you should find that the defendant fraudulently obtained the money by false pretenses." The instruction as given, when read in connection with the charge of the court, could not be construed to mean anything other than that, if the transaction was not infected by fraud, the defendant was not guilty of larceny.

In the charge given by the court, as well as in its refusal to give the instruction which it was requested by the defendant to give, the court evidently supposed that if the consent of the prosecuting witness to part with his property was obtained by

fraud so gross that no title passed, the transaction constituted larceny, whatever might have been the intention of the owner as to the transfer of the title when he parted with the possession of his money.

That theory is not countenanced by the authorities.

In support of it two cases are cited, both of which, in my opinion, recognize-it as an established rule, that if the possession of property be obtained even by gross fraud, the subsequent conversion of it, by the person so obtaining the possession of it, will not constitute larceny, if at the time of the transfer of the possession the owner intended to transfer the title as well. In one of those cases the court says: "If the possession of such property is obtained by fraud, and the owner of it intends to part with his title as well as his possession, the offense is that of obtaining money by false pretenses." (*Commonwealth* v. *Barry*, 124 Mass. 325.) In that case the prosecuting witness testified that he let the defendant have a twenty-dollar bill with which to purchase a quart of brandy, the cost of which was three dollars, and that he, the prosecuting witness, expected to receive back from the defendant seventeen dollars in change. But she failed to return. It was held that the jury was justified in finding that the owner of the money only intended to part with the *mere* possession of it, and on that ground the judgment was affirmed.

Whether the decision is consistent with the rule to which the court gave its approval is, in my opinion, not very material. But Bishop says: " According to the more common doctrine, and in ordinary circumstances, if one takes another's money by the latter's permission or request, to return its value in change (that is, to change it or to get it changed), but retains the money, and refuses to deliver the change, he does not commit larceny; because, when the owner of the money relinquished his possession, he did not contemplate receiving it back, but parted with his ownership therein." (2 Crim. Law, 812.) In support of this he cites several English cases.

A case which is claimed to be more directly in point, is *Loomis* v. *The People*, 67 N. Y. 322, in which the court said: " Where title as well as possession is absolutely parted with, the crime is false pretenses. It will be observed that the *inten-*

*tion* of the owner to part with his property is the gist and essence of the offense of larceny, and the vital point upon which the crime hinges and is to be determined."

Is the charge of the court in this case in harmony with that rule? I think not. On the contrary, I think the charge is clearly to the effect, that if the prosecuting witness was induced by fraud to part with his money, the act of procuring it by such means would constitute larceny, whether he, at the time, *intended* to part with his title to it, or not. Instead of treating the *intention* of the prosecuting witness as the gist and essence of the offense, the court treated it as an immaterial circumstance.

In *Loomis* v. *The People, supra,* the court said : " The prosecutor was induced to place his money upon a game of hazard, upon the assurance of Lewis, one of the prisoners, that he was to win, and he would have his money back, or that in case of loss, other money would be procured upon a check which Lewis claimed to have in his possession, and paid in place of that lost." The court further said there was no loss, and therefore, the contingency in which other money than that which he placed on the game was to be paid to him did not arise.

He himself placed the money on the game, and it was his until lost, and as it was never lost, the seizing and appropriating of it by the defendants was larceny ; as clearly so as if they had seized and appropriated it when he first laid it down. Even in that view, the court said the case was " on the border line," which separates the offense of obtaining money by false pretenses from that of larceny.

It is quite clear that the *intention* with which the prosecuting witness parted with his money was wholly ignored in the case now before us.

If it be desirable to change the law, the power of the legislature is ample. It has been changed in Texas, and may be changed here. But, with Bishop, I think the courts have not the power to do it.

Therefore, I think the judgment and order should be reversed.

McKINSTRY, J., concurred.

Rehearing denied.