[No. 3668.   Decided July 17, 1901.]

THE STATE OF WASHINGTON, *Respondent,* v. SAM SKIL-
BRICK, *Appellant.*

LARCENY—OBTAINING MONEY THROUGH DISHONEST GAMBLING GAME
   —INSTRUCTIONS.

In a prosecution for larceny for obtaining the money of the
prosecuting witness by artifice in a game of poker, where it
appeared from the evidence that the other players in the game
were confederates and that they so manipulated the cards as
to give such witness no chance of winning, but he was induced
by one of the confederates to bet his money on his hand under
the assurance that he held the winning one, all the confederates
knowing what such witness had in his hand, a requested instruc-
tion was properly refused, where the court was asked to charge
that if the jury found the prosecuting witness "engaged in a
game of cards, and intended to bet and win or lose his money
bet, as money is usually lost or won at cards, and allowed the
money to be taken from the table without objection on his part,
because he had lost the bet, you will find the defendant not
guilty, whatever the character of the game may have been."

Appeal from Superior Court, King County.—Hon.
E. D. BENSON, Judge.   Affirmed.

*John F. Dore, J. E. Hawkins* and *Edward E. Brennan,*
for appellant.

*Walter S. Fulton,* Prosecuting Attorney, for the State.

The opinion of the court was delivered by

MOUNT, J.—Appellant was convicted in the superior
court of King county of the crime of larceny, and from
a judgment and sentence appeals to this court.

It appears from the evidence that one Thomas Daley,
who was a country boy, while in the city of Seattle was
met by one Andrew Samson, who was a stranger to him.
Daley and Samson, after some conversation, went to a sa-
loon, and into a small room, and were discussing some por-

tion of the state of Wisconsin where Daley once resided; Samson claiming that he was also from that state. While thus engaged, they were joined by one Herman Hilger and Skilbrick, the appellant. A game of cards was proposed, and Daley, after the other three had played for a little time, was induced also to play. The game was what is commonly known as poker. Upon the deal the cards were so manipulated that Skilbrick, the appellant, held four tens, Daley four queens, and Hilger four kings. Samson's hand being of no value, he threw it aside, but persuaded Daley to show him his hand. Samson then told Daley that he held the best hand, to get all the money he could, and wager it on the hand. Each of the parties then placed his cards in an envelope, and Samson, taking the remainder of the cards, went with Daley and Hilger to a bank, where Daley had his money. After getting the money, they went back to said saloon, where appellant had remained, and proceeded to bet on the hands. When the money, amounting to $61 for each of the three players, was all on the table, and the cards displayed, Samson "grabbed" the money, and Hilger took it from him. Thereupon all separated. Daley immediately informed against the parties, who were all arrested, and charged jointly with the crime of larceny. Separate trials were had.

Appellant requested the court to give to the jury the following instruction:

"If you find the prosecuting witness Daley engaged in a game of cards, and intended to bet and win or lose his money bet, as money is usually lost or won at cards, and allowed the money to be taken from the table without objection on his part because he had lost the bet, you will find the defendant not guilty, whatever the character of the game may have been."

There can be no other conclusion from the evidence in the case than that Hilger, Samson, and the appellant, Skil-

brick, were confederates; that the game was a dishonest game; that Daley had no chance of winning; that the confederates knew what Daley had in his hand; and that there was no element of chance for them in the game. Daley was entirely ignorant of the character of the game. He testified that he believed it to be an honest game of poker. Rapalje, in his work on Larceny and Kindred Offenses (at § 14), says:

"If by trick or artifice the owner of property is induced to part with the custody or naked possession of it to one who receives the property *animo furandi*, the owner still meaning to retain the right of property, the taking will be larceny. Thus it is larceny where the defendants so fraudulently conduct a gambling game or lottery as to give the prosecutor no chance of winning, and he parts with his money through fraud or fear."

See, also, McClain, Criminal Law, § 560.

When Daley placed his money on the hazard of the cards, he did not intend to part with the title, unless it was fairly won by his opponents. When Samson, Hilger, and Skilbrick knew, before the cards were dealt, or afterward by discovery, that Daley was to lose his money through their manipulations, and where they induced him into the game, and one of them, by telling him he had the best hand, persuaded him to place his money on the table, for the purpose of obtaining his money, as they evidently did in this case, it was as much larceny as though they had induced him to lay his money on the table for them to examine and then had taken it by some sleight-of-hand performance, which Daley did not understand, or by force under his protest. The object of the conspirators was to get the money. That they got possession of it through a trick or through fraud, by leading Daley to believe he would stand an equal chance of winning when he had none, or that they got it by taking it without his consent,

makes no difference; the crime would be larceny in either event. *Miller v. Commonwealth,* 78 Ky. 15 (39 Am. Rep. 194); *People v. Rae,* 66 Cal. 423 (6 Pac. 1, 56 Am. Rep. 102); *Loomis v. People,* 67 N. Y. 322 (23 Am. Rep. 123); *People v. Shaw,* 57 Mich. 403 (24 N. W. 121, 58 Am. Rep. 372).

The instruction complained of assumes that where a person loses at a dishonest game, not knowing it to be such, the person conducting such game is not liable for larceny. The weight of authority does not support the appellant's contention. It was not error of the court to refuse the instruction.

The cause is therefore affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, HADLEY and WHITE, JJ., concur.