CEDAR RAPIDS NATIONAL BANK, Appellee, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

INSURANCE:   Theft Insurance—Larceny and False Pretenses Distinguished.   A policy of insurance against loss by reason of *"theft"* does not embrace a loss occasioned by the fraudulent act of a depositor in presenting, during a rush hour, his check to one teller for the full amount of his deposit, and being *paid* in full, and immediately thereafter fraudulently presenting to another teller a duplicate of the check just cashed, and being *paid* in full a second time, without knowledge by the latter teller of the first check and the *payment* thereof.

PRESTON, C. J., and WEAVER, J., dissent.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

OCTOBER 19, 1923.

REHEARING DENIED APRIL 4, 1924.

ACTION upon a policy of insurance, whereby the defendant insured the plaintiff bank against loss by theft. Plaintiff sustained a loss of $6,200. The disputed question is whether it was a loss by *theft*. At the close of the evidence, there was a directed verdict for the plaintiff. The defendant appeals.—*Reversed.*

*C. E. Richmann* and *Grimm, Wheeler & Elliott,* for appellant.

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellee.

EVANS, J.—The plaintiff carried a policy of insurance issued by the defendant, whereby the plaintiff was insured against losses from various causes. The only provision of the policy necessary to be set forth for the purpose of this case is the following:

"(B)   Through robbery, burglary, theft, holdup, destruction, or misplacement, while the property is within any of the

insured's offices covered hereunder, whether effected with or without violence, or with or without negligence on the part of any of the employees.''

Also:

''(E)    This bond does not cover any loss caused from an overpayment by a teller to a customer.''

For the purpose of our consideration of the questions presented, we adopt the statement of facts contained in the brief of appellee, as follows:

''The appellee, Cedar Rapids National Bank, is a national banking corporation, with its principal place of business in the city of Cedar Rapids, Linn County, Iowa, engaged in the banking business in that city. The appellant, American Surety Company of New York, is a corporation organized under the laws of the state of New York. On the 10th day of December, 1912, the appellant issued to the appellee a certain bond, known as a banker's blanket bond, whereby it undertook to indemnify the said appellee against certain losses occurring in its banking house in said city of Cedar Rapids, Iowa, to wit: 'robbery, burglary, theft, holdup, destruction, or misplacement.'    On the 20th day of January, 1921, a person calling himself Chas. E. Boyer called at the plaintiff's bank, stating that he desired to open an account. He conferred with the vice president, Martin Newcomer, and stated that he was a traveling salesman, who had just moved to the city, and that he had taken an apartment in the Brown Apartments.    He deposited, on this occasion, the sum of $6,875 in currency.    There were three paying tellers and four teller's cages along the northerly end of the bank, the bank room being about 120 feet long.    On the following day, January 21st, Boyer personally cashed two checks, one for $300, in the morning, and later on said date, one for $375.    The cage occupied by Julius Richter was the westerly cage.    On Saturday, the 22d day of January, 1921, about 11:30 A. M., a rush hour, while the bank was crowded with customers, said Boyer came to the cage of the teller Julius Richter, and presented a check payable 'to cash,' in the amount of $6,200.    Richter, not knowing the state of Boyer's account, went to the bookkeeper and ascertained that he had sufficient funds in the bank to cover said check, and therefore paid to Boyer the sum of $6,200 in currency.    While

he was paying out the money to him a telephone message came to the bank, stating that Richter was wanted at once at St. Luke's hospital, on account of a serious accident which had happened to his family. The telephone operator receiving the message, failing to get Richter by telephone, sent one of the bookkeepers to notify him. Richter, having paid Boyer the money, receiving this urgent, terrifying message, immediately locked his cage, leaving the paid check therein, and left hastily for the hospital, without notifying anyone that he had cashed the check. The bank closed at 12:30 on Saturdays. Immediately after Richter left, Boyer presented a second check for $6,200 to the teller Leinbaugh, in the easterly cage, who took it to the vice president, Newcomer, to verify the signature. Newcomer knew nothing of the previous check cashed by Richter, so inquired of the bookkeeper, Mrs. Grace M. Collingwood, the same one previously consulted by Richter, as to whether or not the deposit was in currency or checks. She informed him that the deposit was in currency, and he told the teller Leinbaugh the check was all right. Thereupon, the teller Leinbaugh paid the second check for $6,200 to Boyer, who immediately decamped with the money thus secured. The bookkeeper, Mrs. Collingwood, testified that she saw Richter hastily leave the bank, and heard one of the girls say, in the bank, that some of his family had been hurt, and that he had been called to the hospital. When Newcomer made inquiry in reference to the check, which was within a minute or two after Richter had spoken to her about it, she assumed that it was in reference to the first check for the same amount, and that the departed teller had turned it over to the other teller, Leinbaugh, to take care of for him, on account of the supposed accident. The bank did not discover, until Richter returned to the bank, that both checks had been paid. They immediately informed the police, and every effort was made to apprehend Boyer, but he made good his escape. They learned, upon inquiry, that he had never had an apartment in the Brown Apartment, and no trace of him was found. The telephone operator who received the message at the bank testified she was familiar with the voice of the customers of the bank, and that the voice of the person calling in with the message for Richter was strange to her; that the person appeared greatly

excited, and fairly shrieked into the phone, and conveyed the impression of great urgency, and then immediately rung off. The whole transaction was a trick, to *secure possession* of the $6,200, for *the purpose of stealing* the same. The plaintiff, as a part of his main case, offered to show that Boyer, under the name of R. L. Norris, attempted this same trick upon the Fourth National Bank at Atlanta, Georgia; that he was apprehended in the act of doing the same; but that he made his escape from the officers by jumping out of a lawyer's window, whom he had been permitted to consult, and has never been heard of since. The testimony concerning the Atlanta attempt was excluded by the court, upon objection by the defendant. The whole transaction took place in about two minutes, when the bank was crowded with customers, at a rush hour; and all the facts unmistakably show that it was a scheme boldly planned and skillfully executed to secure possession of the bank's money with the intention of stealing it and carrying it away. It was the well known crime of larceny by trick, which has been the subject of many decisions.''

We deem the evidence quite conclusive, and appellant does not contend otherwise, that Boyer acted with fraudulent intent, and with criminal purpose to possess himself of the money of the plaintiff to which he was not entitled. In order to recover, it was incumbent upon the plaintiff to show that Boyer, the wrongdoer, was guilty of *theft* by reason of the means adopted by him to obtain the money. The contention for the defendant is that he was guilty of obtaining money by false pretenses, and that he was not guilty of theft. This is the disputed question presented.

Theft is the equivalent of larceny. It is denominated by the latter term in our criminal statutes. Our statutes also define the crime of obtaining property by false pretenses. These are separate and distinct offenses. When the larceny is accomplished by a trick, they approach each other in close similarity. Even then a well defined distinction is maintained. The latter offense is defined by Section 5041 of the Code, which is a part of the chapter on ''Cheating by False Pretenses.''

Under our previous holdings, if the wrongdoer by false pretense or trick induce the injured party to surrender to him the

*possession* of the property, without any *intent on the part of the injured party* to pass the *title* of such property to the wrong-doer, and if the wrongdoer so obtain possession of the property with intent to appropriate the same to his own use, then the crime thus committed is a larceny by trick. In such a case, the fraudulent inducement is deemed the equivalent of a trespass and of a felonious taking, which is an essential element of the crime of larceny. On the other hand, if the wrongdoer fraudulently induce the injured party to surrender to him, not simply the temporary possession of the property, but the absolute *title to and possession* of the property, then his offense is that of obtaining property by false pretense, and not that of larceny. To put it in another way, if the owner of the property be induced by a fraudulent trick to loan it to the wrongdoer for temporary use and return, and if the wrongdoer so borrow the same with intent to appropriate to his own use, and does so appropriate, the offense is larceny. On the other hand, if the owner be thus fraudulently induced to sell or trade his property and to part with it absolutely to the wrongdoer, the offense is that of obtaining property by false pretense. In *State v. Loser,* 132 Iowa 419, 427, we said:

"But in view of the allegations of the indictment and the charge as given by the court, it was important that the crimes of larceny and of cheating by false pretenses be clearly distinguished. That there is a distinction between the two is apparent, although they are in some respects similar in character. The distinction is this: If the false pretenses induce the owner to part with his property, intending to transfer both title and possession, the crime is cheating by false pretenses. If, on the other hand, one by fraud, trick, or false pretense induces the owner to part merely with the possession of his property, there being no intent to pass the title, and the party who receives it took it with intent fraudulently to convert it to his own use, the crime is larceny. *State v. Edwards,* 51 W. Va. 220 (41 S. E. 429, 59 L. R. A. 465); *State v. Hall,* 76 Iowa 85; *People v. Morse,* 99 N. Y. 662 (2 N. E. 45). The distinction depends largely, if not wholly, upon *the intent of the prosecutor. State v. Anderson,* 47 Iowa 142; *State v. Hall,* supra; *People v. Rae,* 66 Cal. 423 (6 Pac. 1, 56 Am. Rep. 102); 1 Wharton, Criminal

Law, Section 1179; *Loomis v. People,* 67 N. Y. 329 (23 Am. Rep. 123)."

At page 429, we said:

"If the prosecutors did not intend to part with the title, but delivered the possession for a temporary purpose, and defendants took and fraudulently converted it, they were guilty of larceny, and not of the crime of cheating by false pretenses. *State v. Anderson,* supra."

In *State v. Dobbins,* 152 Iowa 632, 638, we said:

"That a felonious taking is necessary to constitute larceny, and that, generally speaking, a taking which is accomplished with the consent or acquiescence of the owner of the property is not felonious, will be readily conceded; but where such consent is obtained by fraud or trick, with promise to return the property after it has served some temporary use or purpose, but with the secret intention on the part of the receiver to convert. it, then, as has already been said, the fraud supplies the place of trespass in the taking, and the offense committed is larceny. Says the California court: 'Consent to deliver the temporary possession is not consent to deliver the property in a thing; and if a person, *animo furandi,* avail himself of a temporary possession for a specific purpose, obtained by consent, to convert the property in the thing to himself and defraud the owner thereof, he certainly has not the consent of the owner. He is acting against the will of the owner, and is a trespasser.' *People v. Rae,* 66 Cal. 423 (6 Pac. 1, 56 Am. Rep. 102). The rule as thus stated has been frequently recognized in cases substantially like the one we are now considering, and is too manifestly just and wholesome to require further discussion at our hands."

To the same effect, see *State v. Anderson,* 47 Iowa 142; *State v. Hall,* 76 Iowa 85.

Recognizing this distinction between the two offenses, was the offense of Boyer that of larceny, or that of obtaining property by false pretense? Boyer received the money at the hands of Leinbaugh, the bank teller. He had fraudulently induced Leinbaugh to believe that he had that amount of money still to his credit in the bank. Leinbaugh honored his check, with the intent to pay him what was due him from the bank, as Leinbaugh was induced to believe. Boyer in fact had no right to the money

which he received. Knowing that, he received it, fraudulently intending to appropriate it to his own use. What was it that he induced Leinbaugh to do? Did he induce him to part temporarily with the possession of the money, or did he induce him to part with the money absolutely? The nature of that inducement must be found in the mind of Leinbaugh. What was in his mind in that regard? Did he intend simply to loan the money or to part with it temporarily for some temporary use? Did he intend that the money should be returned to him? If he did, then the offense was that of larceny by trick. We see no possible ground for saying upon this record that Leinbaugh intended any qualified delivery of the possession of the money, or that he intended that it should be returned to him for any reason, or that he intended to part with the possession and to retain the title. Indeed, it appears quite clear that Boyer's fraudulent trick so operated upon the mind of Leinbaugh that he recognized the absolute right of Boyer to the money, and in that recognition he paid the money, without any necessary expectation of ever seeing Boyer again. He did not intend a temporary possession of the money by Boyer, nor did he intend the creation of a debt by Boyer. If Boyer were under prosecution for obtaining the money by false pretenses, it is inconceivable that he should be deemed not guilty thereof. We see no escape from holding herein that such was his offense, and that it was not larceny, within the meaning of our criminal statutes.

It may be added that this conclusion is quite consistent with the general character of the insurance provided by the policy. Losses resulting through the *mistakes* of employees or officers, even though induced by fraud, are not, in terms, within the scope of the insurance. The quality of *mistake* on the part of the employees strongly characterizes the circumstances of this loss. If the bookkeeper had not been mistaken in her own inference that Boyer was presenting to Leinbaugh the *same* check which he had presented to Richter a moment before, the loss could not have occurred.

It is conceded that the policy does not cover losses resulting from the mere fraud of third parties, or from the offense of obtaining property by false pretenses, and that, unless Boyer's offense can be classified as *larceny*, there is no liability there-

under for this loss. The judgment below must, therefore, be reversed.—*Reversed.*

ARTHUR and DE GRAFF, JJ., concur.

STEVENS, J., concurs in result.

PRESTON, C. J., and WEAVER, J., dissent.

FAVILLE, J., takes no part.

PRESTON, C. J. (dissenting). With all due respect for the opinion of the majority, I cannot bring myself to the point of concurring in the majority opinion. I therefore respectfully dissent.

Under the undisputed evidence in the case, I think that Boyer was guilty of larceny, rather than of obtaining money under false pretenses. I shall state my reasons as briefly as I can.

Under the authorities, it is sometimes difficult to determine whether, under a given state of facts, a party is guilty of larceny or of false pretense. I am inclined to think that, in some cases, a situation might be such as to involve either one. 17 Ruling Case Law 8. In some jurisdictions, all distinction between the two crimes of obtaining property by false pretenses and larceny has been abolished. *Zink v. People,* 77 N. Y. 114. In some of the old English cases, the difference between the two is more artificial than real, and rests purely on technical grounds. Much of the nicety is due to the fact that, at the time many of the English cases were decided, larceny was a capital felony in England, and the judges naturally leaned to a more merciful interpretation of the law. 17 Ruling Case Law 8. A conviction or acquittal of one was a bar to a prosecution for the other. 12 Cyc. 286, Note. It has been held otherwise in this country. *Dominick v. State,* 40 Ala. 680. But see *State v. Reiff,* 14 Wash. 664. This being so, I am not so sure but that the rule ought to apply that there is an ambiguity in the policy, which should, under familiar rules, be construed against the party who prepared his own contract. But I shall not discuss that feature of the case.

In this state, we have larceny by embezzlement, by bailee, and other embezzlements. Code Sections 4841 and 4842. See, also, Code Sections 4844 and 4852. By these sections, different kinds of embezzlement are made larceny. See, also, Code Sec-

tions 4839 and 4838. The last named section makes it larceny to falsely personate · another. To falsely personate another would clearly be falsely pretending to be another—a false pretense. In *Beasley v. State*, 138 Ind. 552 (38 N. E. 35), a conviction for larceny was sustained where defendant, by threats and at the point of a pistol, compelled the owner to part with the money against her own free will, thus placing the parting with possession on the same footing as though there had been a promise or trick. Ordinarily, this would be robbery; but there are many cases holding that, when the taking is done with consent which is not a voluntary one, as the result of fear, induced by threats, it is a taking without the owner's consent, and a larceny. *State v. Kallaher*, 70 Conn. 398; 17 Ruling Case Law 18. In *State v. Hall*, 76 Iowa 85, 87, we said:

"If possession is obtained by a trick, artifice, or false pretense, with the felonious intent on the part of accused to convert them to his own use, he is guilty of larceny. These are familiar rules of law."

In *Towns v. State*, 167 Ind. 315 (78 N. E. 1012), it was held that, where one procured contributions by falsely representing that he was a representative of a national organization whose object was to construct homes for convicts, and that his mission was to raise funds for such a home, and he converted the amount contributed to his own use, he was guilty of larceny, and not merely of obtaining money under false pretenses. The distinction between larceny by trick and obtaining property by false pretense is a narrow one. In both, the property is voluntarily relinquished by the owner, and possession is secured through a trick or false pretense; and in both, the accused secures the property with intent to convert it to his own use. The distinction between the two crimes lies in the *intention* with which the owner parts with the property. If his intention is to invest the accused with the mere possession only of the property, and the latter, with the requisite intent, receives and converts it to his own use, it is larceny. 25 Cyc. 10, 11; *People v. Rae*, 66 Cal. 423, and other cases cited in the note; *State v. Loser*, 132 Iowa 419, 427. But if the owner, in parting with the property, intends to invest the accused with the title also, the latter has committed the crime of obtaining the property by false pretense. 25 Cyc.

11, and cases; *State v. Loser*, 132 Iowa 419, at 427. Ordinarily, to constitute the crime of obtaining money or property by false pretenses, there must be a false representation of a past or existing fact, knowledge of its falsity, intent to deceive, reliance thereon, etc. 25 Corpus Juris 589. The gist of the crime is the falsehood of the pretense. *United States v. Watkins*, 3 Cranch (C. C.) 441; *State v. Merry*, 20 N. D. 337 (127 N. W. 83). In *State v. Foxton*, 166 Iowa 181, we held that one who issues a check upon a bank in which he has no account and no funds, with no reasonable expectation that it would be paid, is guilty of obtaining money by false pretenses, even though no representation was made. There are numerous cases, however, holding that such would not be a criminal offense unless some express representation was made. *Williams v. State*, 10 Ga. App. 395 (73 S. E. 424); *Maxey v. State*, 85 Ark. 499 (14 Ann. Cas. 509). In some jurisdictions, there are special statutes covering this subject. *People v. Pindar*, 210 N. Y. 191 (144 N. Y. Supp. 242, 104 N. E. 133). It is so in Iowa. Chapter 268, Acts of the Thirty-seventh General Assembly, covers such a situation precisely; but this enactment does not make such a transaction obtaining money by false pretenses. It simply makes such a transaction a crime. It will be observed that that statute was passed some three years after the decision in the *Foxton* case, and was wholly unnecessary, under that holding.

In the instant case, we have more than the mere passing of a worthless check. It is very clear that this entire transaction from the very first was a cleverly laid plan by Boyer and a confederate to obtain the money,—a trick, pure and simple. There was not only the presentation of the check, but there was the trick of having someone telephone the teller to come to the hospital at an opportune time,—also a previously designed plan. The cases hold that the correct distinction between larceny and obtaining money by false pretenses is that if, by means of any trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner parts with not only the possession, but with the right of property or title also, and such is his intention, the offense will be obtaining goods by false pretenses. This is the rule of *State*

*v. Dobbins,* 152 Iowa 632 (42 L. R. A. [N. S.] 735); *State v. Ryan,* 47 Ore. 338 (1 L. R. A. [N. S.] 862), and note. The character of the crime depends on the intention of the parties,—the intention of the owner to part with the possession and with the property. *Loomis v. People,* 67 N. Y. 322 (23 Am. Rep. 123); 88 Am. St. 571, note. It seems to me that it is idle to say that the officers of plaintiff bank intended to voluntarily part with both the possession and the title to the money. Clearly, they would not pay over $12,400 on the two checks when Boyer had only $6,200 on deposit when the first check was cashed, and nothing when the second one was cashed. This would be throwing away $6,200 to a stranger, without any reason for it. There can be no question but that it was Boyer's intention at the outset to secure and convert the money. The possession was obtained by trick, which it is conceded is the equivalent of trespass. Larceny always includes the taking and conversion of property against the will, or without the consent of the owner. It involves a trespass, and there can be no larceny where there is a consent to the taking of the property with the intention that the possession and title shall pass. 17 Ruling Case Law 12. Concededly, possession obtained by trick is, in law, no possession at all. Some of the cases put it that the taking may be constructive, as where the possession is obtained by fraud, trick, or deception. *Frazier v. State,* 85 Ala. 17 (7 Am. St. 21, and note). So, too, the consent of the owner so obtained is no consent. Possession so obtained is against his will. There is a distinction, I think, between money and other forms of personal property, as a horse, and the like. Money passing from one person to another would not ordinarily be subject to identification if the owner sought to follow it. Some of the cases hold that a test for distinguishing, in a given instance, between larceny and obtaining property other than money by false pretenses, is whether the offender could confer a good title on another by the sale and delivery of the property. *Zink v. People,* 77 N. Y. 114 (33 Am. Rep. 589).

I think that this case comes within the rule announced in *State v. Dobbins,* cited in the majority opinion. Mr. Justice Weaver, who wrote the *Dobbins* case, so considers it. That was a criminal case, and a conviction was sustained. It was there

said that there is a technical distinction between larceny and cheating by false pretenses, in that the former crime involves the felonious taking, but that the fraud or trick supplied the place of trespass. In that case, the money was obtained on the representation that the transaction amounted to a deposit for a certain purpose, and that the money would be returned. I suppose that the significance of the promise to return is that, if the possession was given voluntarily, and therefore lawfully, a conversion thereafter would not be larceny; but where the promise is coupled with a previously formed design not to return the money, this constitutes the fraud or trick which makes the parting with possession unlawful, and the conversion relates back to the possession by fraud or trick. But the promise as in that case is not the only way such a fraud may be perpetrated. There are many ways in which the same result may be accomplished, and with the same effect, without such a promise. In other words, that is simply one form of trick. The books are full of cases illustrating this, where there is no promise. Where one comes lawfully into possession of the goods of another, with his consent, a subsequent felonious conversion does not constitute larceny, because the felonious intent is wanting at the time of the taking. 17 Ruling Case Law 12; *Smith v. Commonwealth,* 96 Ky. 85 (49 Am. St. 287); *State v. Coombs,* 55 Me. 477 (92 Am. Dec. 610, and note).

I have tried to show, and it is very clear to me, that in this case Boyer had the felonious intent at the very time of securing, and before he secured, possession of the money. The different acts of Boyer prior to the final consummation were a part of the scheme or trick. I have cited a number of cases which are not directly in point, but which, I think, have a bearing tending to show how closely related larceny is to other crimes, and as showing that, even though acts might properly be held to be robbery, larceny from the person, embezzlement, and false pretenses, convictions for larceny were sustained. The rule of the *Dobbins* case has been applied to cases where a person takes a piece of money from another to change it, and keeps it, with the unlawful intent to convert it to his own use, and refuses to deliver the money given him, or the change therefor, on demand; and the fact that the taking was open and from the owner is of no consequence, if the intent to steal existed. *State v. Anderson,* 25

Minn. 66 (33 Am. Rep. 455, and note); *Verberg v. State,* 137 Ala. 73 (97 Am. St. 17, and note). This is so for the reason that the delivery of money to another for the sole purpose of getting it changed is a parting with the custody only, and not with the title. So it is in this case, I think. The teller parted with the possession of the second $6,200 solely because of the trick perpetrated, and this trick was not alone the presentation of the check, but the combination of circumstances, the telephoning, and so on. The possession would not have been parted with but for the trick, and it would seem clear that there was no intention or purpose to part with the title thereto. Of course, if possession had not been given, it would be impossible to pass title. And we have seen that possession by fraud is no possession. The mere manual act of passing over the money because of the trick could not constitute legal change of possession or change of title, or constitute intent to do so. Clearly, had the teller known of the trick, he would not have parted with the possession; and in that case, it could not be maintained, with any degree of plausibility, that the title was parted with, or that it was so intended. If he did not so intend, it is larceny. 25 Cyc. 10, 11; *People v. Rae,* supra; *State v. Loser,* supra. I should have said before that the distinction between the two offenses depends largely, if not wholly, upon the intent of the prosecutor. *State v. Loser,* supra; *State v. Anderson,* 47 Iowa 142; *State v. Hall,* supra. To my mind, every element of the crime of larceny is present in this case. There is the obtaining of possession by a trick, which is equivalent to the taking or trespass; it was against the will of the owner, and without his consent, because consent obtained by trick is no consent; there was previously formed design on the part of Boyer; the fraud vitiates the whole transaction; it was not the intention to pass title; and there was a felonious conversion and intent to steal and to deprive the owner of his property, to his injury. I think that all the circumstances ought to be taken into account: the conduct of Boyer prior to the day the last $6,200 was paid, as well as that immediate transaction. I have no doubt, and no one can have doubt from reading this record, that, from the very first, when the money was originally deposited, it was the intention of Boyer to perpetrate just such a fraud. It was a preconceived design on his part to secure this

money and appropriate it to his own use. The ruse, carefully planned from the beginning of the entire transaction, made the use of the second check possible. The trap had been already set when the check was presented. Boiled down, the proposition is tersely stated thus: If a person with a preconceived design to appropriate property to his own use obtains possession of it by means of fraud or trick, the taking of it under such circumstances amounts to larceny, because in such cases the fraud vitiates the transaction. 17 Ruling Case Law 13.

In Rapalje on Larceny and Kindred Offenses 14, the rule is stated thus:

"If, by trick or artifice, the owner of property is induced to part with the custody or naked possession of it to one who receives the property *animo furandi*, the owner still meaning to retain the right of property, the taking will be larceny."

*Smith v. People*, 53 N. Y. 111 (13 Am. Rep. 474); *Huber v. State*, 57 Ind. 341; *Loomis v. People*, 67 N. Y. 322 (23 Am. Rep. 123); *State v. Bryant*, 74 N. C. 124; *Regina v. Hollis*, L. R. 12 Q. B. 25 (49 L. T. [N. S.] 572); *Walters v. State*, 17 Tex. Ct. App. 226 (50 Am. Rep. 128).

"It is larceny where the defendants so fraudulently conduct a gambling game or lottery as to give the prosecutor no chance of winning, and he parts with his money through *fraud* or fear." Rapalje, supra, and cases.

"A conviction of larceny is warranted on proof that the defendant went into a shop and asked to buy the chattel, but was referred by the clerk to the owner, who refused to sell it to him except upon his father's order, which was not obtained, and thereafter defendant asked the clerk to be shown the chattel, which he took and carried away, saying to the clerk that he had made it all right with the owner. [*Commonwealth v. Wilde*, 5 Gray (Mass.) 83 (66 Am. Dec. 350)]. If the property is obtained by defendant through the connivance of a servant of the owner, the defendant may be guilty of larceny though the servant's offense is embezzlement. [*State v. McCartey*, 17 Minn. 76]." Rapalje on Larceny 14.

The obtaining possession of a soldier's discharge paper by falsely personating the owner is held larceny. *Commonwealth v. Low*, Thach. Cr. Cas. (Mass.) 477.

A case directly in point, as I think, wherein an insurance company was held liable for theft of property, is *Overland-Reno Co. v. International Indemnity Co.*, 111 Kans. 668 (208 Pac. 548). The court there said:

"The question in the case is whether the obtaining of the automobile in the way described constituted a larceny, under the contract of insurance. It provided insurance against theft, robbery, or pilferage, excepting that committed by persons in the household service or employment of the assured. The plaintiff insists the term 'theft,' as used, is equivalent to larceny, and that, as Dolson fraudulently gained possession of the automobile by a preconceived plan, with the intention of depriving the owner of its property, a theft was committed. As will be observed, the facts pleaded are quite similar to those involved in *Motor Co. v. Insurance Co.*, 111 Kans. 225 (207 Pac. 205). That decision, which was made since the judgment in this was rendered, is controlling here. It was decided that: 'The prevailing rule is that *any* scheme, whether involving *false pretenses* or other *fraudulent trick* or device, whereby an owner of property is swindled out of it with the preconceived intent of the swindler not to pay for it, is classed as larceny, and is punished accordingly.' "

In the *Hill Motor Co.* case, the provision of the policy was like the policy in the *Overland* case. The insured was deprived of property by the swindler by means of a preconceived plan, which involved impersonation, misrepresentation, and fraud. It was held that this was a species of theft, for which the insurance company was liable.

It seems to me that my conclusion, and appellee's contention, is sustained by the foregoing authorities. See, also, 17 Ruling Case Law 13, and many cases cited in the note, some of which are as follows: *Frazier v. State*, supra; *People v. Rae*, supra; *State v. Kallaher*, 70 Conn. 398; *State v. Levine*, 79 Conn. 714 (10 L. R. A. [N. S.] 286); *Harris v. State*, 81 Ga. 758 (12 Am. St. 355, and note); *Slaughter v. State*, 113 Ga. 284 (84 Am. St. 242, and note); *Doss v. People*, 158 Ill. 660 (41 N. E. 1093); *Luddy v. People*, 219 Ill. 413 (76 N. E. 581, 3 L. R. A. [N. S.] 508); *Beasley v. State*, 138 Ind. 552 (38 N. E. 35); *Williams v. State*, 165 Ind. 472 (75 N. E. 875); *Towns v. State*, 167 Ind. 315

(78 N. E. 1012); *State v. Hall,* supra; *Commonwealth v. Lannan,* 153 Mass. 287 (26 N. E. 858); *Commonwealth v. Flynn,* 167 Mass. 460 (45 N. E. 924); *People v. Shaw,* 57 Mich. 403; *People v. Miller,* 169 N. Y. 339 (62 N. E. 418); *Vought v. State,* 135 Wis. 6 (32 L. R. A. [N. S.] 234). See, also, *Murphy v. People,* 104 Ill. 528; *State v. Skilbrick,* 25 Wash. 555 (66 Pac. 53); *Smith v. National Surety Co.,* 77 Ore. 17 (149 Pac. 1040).

I would affirm.

WEAVER, J., concurs in this dissent.