The State of Iowa v. Jones.

acts endangered the life of the complainant, the law grants her the relief prayed for.

Affirmed.

THE STATE OF IOWA V. JONES *et al.*

1. INDICTMENT FOR CONSPIRACY. It should appear on the face of an indictment for conspiracy, that the object of the conspiracy was criminal, or that the means to be employed in attaining it were criminal.

2. SAME. The words "to cheat and defraud," without more, do not necessarily imply a criminal object when alleged as the purpose of a conspiracy.

*Appeal from Louisa District Court.*

WEDNESDAY, JUNE 4.

*C. H. Phelps* for the appellant, in his argument upon the sufficiency of the indictment, cited *Hartman* v. *The Commonwealth*, 5 Barr (Pa.), 66; Hawk. P. C. B., 2, ch. 25, § 60; *Commonwealth* v. *Eastman*, 1 Cush., 189; 1 L. Cr. C., 264, and notes on 294; *The Commonwealth* v. *Hunt*, 4 Met., 111; *The People* v. *Lambert*, 9 Cow., 578.

*C. C. Nourse*, Attorney-General, for the State, upon the same point, cited *The State* v. *Buchanan*, 5 Harris & John., 329; *The State* v. *Rowley*, 12 Conn.; *The State* v. *Burnhame*, 15 N. H., 396; *Commonwealth* v. *Mifflin*, 5 Watts & S., 461; *Commonwealth* v. *Warren*, 6 Mass., 73; *Commonwealth* v. *Davis*, 9 Id., 416; *The People* v. *Richards and Patton*, 1 Mich., 217; *Twitchell & Norton* v. *The Commonwealth*, 9 Barr.

LOWE, J. — On the 22d day of July, 1857, Robert Wilson executed and delivered to one N. W. Burris, a promissory note of $5,850, payable twelve months after date. This note was indorsed in blank by Burris to Geo. A. Jones, one of the defendants in this prosecution. Afterwards, on the 22d of March, 1859, said Jones instituted a suit on said note, making Wilson, the payer, one Sylvanus Dunham, surety, and Burris, the indorser, parties, alleging in his petition, that Dunham had signed said note as surety after the same had been executed and delivered by Wilson. At the trial, Dunham's defense was a denial, under oath, of the execution of the note by him. The plaintiff, Geo. A. Jones, called his co-defendants in this case, J. B. Jones, Gustavus Jones, and A. W. Kelly, to prove the execution of the note by Dunham, which fact they testified to, and the court, on the hearing of the cause, discharged Dunham, upon the ground, that it appeared from the evidence, that if Dunham signed the note at all, he did so after its maturity, and therefore was not liable in the suit in which he was impleaded.

After this, upon the complaint of Dunham, the grand jury of Louisa county found an indictment against the defendants in this prosecution, consisting of two counts, but substantially of the same import, the first of which is as follows: (omitting the formal parts,) * * * * * "do find and present that Geo. A. Jones, J. B. Jones, Gustavus Jones and A. W. Kelly, on or about the 15th day of February, 1859, at Louisa county, and State aforesaid, being then and there persons of evil minds and disposition, together wickedly devising and intending to cheat and defraud one Sylvanus Dunham, did then and there, falsely and fraudulently, maliciously and unlawfully, conspire, combine, and confederate, and agree among themselves, to cause said Sylvanus Dunham to be impleaded in the District Court of said county of Louisa, and did then

and there fraudulently and falsely institute a suit at law and civil action in the District Court of Louisa county, upon a forged and fictitious claim and demand, and afterwards, &c., in execution of said last mentioned premises, and in pursuance of said conspiracy, by means of false swearing and willful and corrupt perjury, did then and there attempt to procure a judgment, &c., upon the said false, forged and fictitious instrument, claim and demand for a large sum of money, to wit: six thousand eight hundred dollars, by means whereof, &c., defendants then and there intended to cheat and defraud the said Dunham out of six thousand eight hundred dollars."

The second count charges substantially the same thing, and both aver that the defendants knew the writing to be forged and fictitious.

A motion to quash, and a demurrer to the sufficiency of this indictment, were severally overruled, the parties tried and convicted. The same questions were raised anew under a motion in arrest and for a new trial, and are now presented for our consideration.

The most important of these, which have attracted the greatest attention from counsel in argument, is the inquiry, whether the facts charged, amount in law to an indictable conspiracy. It is believed that under the current of English authorities, and perhaps some of the earlier American decisions, which need not now be recited, the form of the above indictment could be sustained, and would be held to be sufficient. In the more modern American adjudications, there has been a tendency to greater strictness in the presentment and trial of conspirators. These later decisions, we are inclined to follow upon principle, believing that they have succeeded in fixing some definite and assignable limits to what is meant by the offense of conspiracy, which, heretofore, was admitted to be uncertain, complicated and difficult to be defined; and to this extent,

also, they seem to be more in accord with the genius and theory of our *bill of rights*, which requires that " in all criminal prosecutions, the accused shall be informed of the accusation against him."

They hold, for instance, that it should appear on the face of the indictment, that the object of the conspiracy is a criminal one, or else, if the purpose thus disclosed does not import a crime, then other facts should be alleged and set forth, so as to show that the means to be employed are criminal, thereby withdrawing the crime of conspiracy from the limitless field of. wrongful acts, where the old authorities had allowed it to go, to the more circumscribed range of the criminal Code, either as a means or an end. This brings both elements of this compound offense, to wit: the combination and the injury contemplated, under the clear and more certain control of the courts.

In the States of Maine, New Hampshire, Massachusetts, Vermont, New York, New Jersey and Pennsylvania, it has been settled that a general charge of a conspiracy to effect an object not criminal, is not sufficient, and that a charge of such a conspiracy is to be accompanied with the further statement of the means agreed to be used to effect the object, and those means must appear to be criminal. 1 Lead. Crim. Cases, by Bennett and Heard, 264 and notes; 1 Cushing, 189; *Commonwealth* v. *Eastman et al.*, 7 Id., 514; *Same* v. *Shedd et al.*, 4 Metcalf, 111; *State* v. *Roberts*, 34 Maine, 320; *State* v. *Hewitt*, 31 Id., 386 and 396; 15 New Hampshire, 396; 9 Cowen, 578; 4 Halsted, 293; 5 Barr, 60.

Tested by the doctrine laid down in these cases, the charge of conspiracy in the indictment before us, we apprehend, will be found insufficient. The words " *to cheat and defraud*" Dunham of his money, *without more*, do not necessarily imply a criminal object, either at common law, (see the above authorities, and also 2d Bishop on Crim. Law, 117, 119, &c.,) nor under our statutes, which, like the common law,

make them criminal only when they are accompanied by some false pretenses or artifices. It will be observed that no such false tokens or symbols are alleged and set forth, as to indicate clearly, and with technical precision, the nature of the offense, or, indeed, whether any offence at all had been committed, not even a wrong, for such are the multiplied phases of business transactions and human conduct in a moral aspect, that they range all along up from slight improprieties to crimes of the first magnitude, and according to the refined ethics of some, the words cheating and defrauding would be applied to acts for which a party could not be held liable, even in a civil suit, much less criminally.

We remark, however, that this omission may be aided by a particular statement of the illegal means by which the object was to be effected; for the theory of this peculiar crime is such, that, however lawful the purpose of the conspirators may be, yet, if by a corrupt combination they reach that purpose through or by virtue of criminal means, the offense is consummated.

The remaining question, then, for further consideration, is whether, inasmuch as the object of this conspiracy is not shown upon the face of the indictment to be criminal *per se*, it is aided by a sufficient statement of the criminal means to effect the proposed object.

The substance of this part of the charge is, that the defendants corruptly agreed among themselves to cause one Sylvanus Dunham to be falsely impleaded in a civil action on a forged note, and, in pursuance of their conspiracy, did attempt, by means of corrupt perjury, to obtain a judgment for $6,800 on said forged instrument, and thereby intended to defraud said Dunham of said sum of money, &c.

Now, the only illegal part of the means here set out and to be employed, is the false swearing, but whether defendants had corruptly concerted together to swear falsely, in order to maintain the suit against Dunham, is not averred,

nor can it be inferred from the structure or manner in which the charge is laid, except by the merest intendment, which the law does not allow in criminal procedure. It is very evident that the defendants corruptly agreed that they would institute a civil suit upon forged paper, and obtain, if possible, a fraudulent judgment, but whether, in order to compass this end, they had a previous understanding that they would forswear themselves, must clearly be a matter of conjecture from the language employed, yet such an unlawful agreement should be distinctly alleged as an indispensable element in showing a conspiracy from the use of criminal means. We are compelled to hold, therefore, that the indictment was insufficient, and that the motion in arrest should have been sustained.

We are not persuaded, from the examination which we have made of the instructions given and refused, to which exceptions were taken, that the court had committed any substantial error, especially upon the theory that the indictment before it was a good one, and therefore we deem it unnecessary to express in detail our views with reference to them.

The judgment below will be

Reversed.