| 132  | 419 |
| j129 | 718 |
| 132  | 419 |
| 137  | 572 |
| 132  | 419 |
| f144 | 266 |
| 144  | 271 |

STATE OF IOWA, Appellee, v. LEON LOSER, ED. MOORE, ET AL., Appellants.

**Conspiracy to cheat by false pretenses:** INDICTMENT: DUPLICITY.
1    An indictment under Code Section 5050, is not bad for duplicity because charging that defendants conspired together to injure the property and property rights of another, and also that by means of the conspiracy did obtain property by false pretenses.

**Same:** ALLEGATIONS OF OVERT ACTS. Where the gist of the crime
2    charged is a conspiracy to commit unlawful acts, the indictment need not allege the overt acts with the same particularity as where reliance is placed upon them alone for conviction.

**Same:** OVERT ACTS IN ANOTHER STATE. Under Code Section 5050,
3    the crime of conspiracy to injure the property rights of another is punishable, although the overt acts were committed in. another state, or in the jurisdiction where committed were not in themselves a crime.

**Former conviction:** IDENTITY OF PARTIES: SUFFICIENCY OF PROOF.
4    The middle initial is no part of one's name and ordinarily of little importance in the matter of identity; and where the state offered the certified record of a former conviction of one of the same name as defendant, except that it contained a middle initial, it made a *prima facie* showing for the admission of the record and the identity of the parties became a question for the jury.

**Conspiracy to cheat by false pretenses:** INSTRUCTIONS. Where by false pretenses the owner is induced to part with his property, intending to transfer both title and possession, the crime is cheating by false pretenses, but where he is induced thereby to part merely with the possession and the party receiving the property takes it with intent to convert it to his own use, the crime is larceny; so that, under an indictment charging a conspiracy to cheat by false pretenses, an instruction that if the pretenses pursuant to the conspiracy induced the prosecutor to part merely with the possession, irrespective of his intent with respect to passing the tile, was erroneous.

**Variance:** One indicted for conspiracy to cheat by false pretenses cannot be convicted thereunder of conspiracy to commit larceny.

**Same:** OVERT ACT: INTENT. In a prosecution for conspiracy to cheat by false pretenses the fact that the overt act proven is larceny will not require an acquittal, since the overt act is not the gist of the crime charged, but is merely provable as showing the intent of defendant.

*Appeal from Pottawattamie District Court.*— HON. W. R. GREEN and A. B. THORNELL, Judges.

TUESDAY, JULY 11, 1905.

REHEARING DENIED, WEDNESDAY, NOVEMBER 21, 1906.

INDICTMENT for criminal conspiracy. Trial to a jury, verdict and judgment of guilty, and defendants appeal.— *Reversed.*

*A. W. Askwith* and *B. I. Salinger,* for appellants.

*Charles W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

DEEMER, J.— The indictment charges defendants Loser, Moore, and Grimm, with the crime of conspiracy, in that, with unlawful, fraudulent, and malicious intent to injure the business, property, and rights in property of Charles Gregory, William Barker, and numerous other persons, they

did then and there mutually conspire and confederate together,

with the unlawful, fraudulent, felonious and malicious intent and purpose wrongfully to cheat, designedly, unlawfully, fraudulently, and feloniously by false pretenses, all the persons above named and referred to, and by means of false and fraudulent pretenses, statements and representations to obtain unlawfully, designedly, fraudulently, and feloniously from said persons above named and referred to more than $5,000.00 in good and lawful money of the United States of America, and bank drafts all of the value of more than $5,000.00 and of the property of the said Charles Gregory and William Barker, and as a result and consummation of said conspiracy, defendants did wilfully, unlawfully, designedly, fraudulently and feloniously, by means of false and fraudulent statements, pretenses and representations, obtain from said Charles Gregory and of their property more than $5,000 in good and lawful money of the U. S. of A. and good and valid bank drafts.

The gist of the crime charged is a conspiracy to commit the crime of cheating by false pretenses. The material parts of the statutes under which this indictment was found

1. CONSPIRACY TO CHEAT BY FALSE PRETENCES: indictment: duplicity.

read as follows (section 5059): "If two or more persons confederate or conspire together with the fraudulent or malicious intent wrongfully to injure the person, character, business property, or rights in property of another; or to commit any felony, they are guilty of a conspiracy, and every such offender, and every person who is convicted of a conspiracy at common law shall be imprisoned," etc. Section 5041 defines false pretenses, and makes it a felony for any person to " designedly and by false pretenses, or by any privy or false token, and with intent to defraud, obtain from another any money, goods or other property. . . .

The first point made on the appeal is that the indictment is bad for duplicity, or is uncertain in its language, in that it charges a conspiracy to injure the business, property,

and rights in property of another or others, and also the overt act of cheating by false pretenses. The language of the statute quoted is disjunctive in character, and in such cases it is permissible to charge the enumerated acts conjunctively. *State v. Phippe,* 95 Iowa, 491; *State v. Feurhaken,* 96 Iowa, 299.

II. As the crime charged is conspiracy to commit unlawful acts, the commission of these acts need not be charged as if the overt acts were the basis of the charge. The crime

2. SAME: allegation of overt acts.

charged is the conspiracy, and may be established although no overt acts were in fact committed; hence the State is not required to state these acts with the same particularity as if it were relying upon them alone for a conviction. *State v. Savoye,* 48 Iowa, 565; *People v. Watson,* 75 Mich. 582 (42 N. W. 1005); *State v. Grant,* 86 Iowa, 217; *State v. Soper,* 118 Iowa, 1, and cases cited; *State v. Sterling,* 34 Iowa, 443; *State v. King,* 104 Iowa, 727; *People v. Arnold,* 46 Mich. 271 (9 N. W. 406); *State v. Ormiston,* 66 Iowa, 145; *Com. v. Goldsmith,* 12 Phila. 636.

III. The overt acts in this case were committed in Missouri, and it is stoutly contended by counsel that while the indictment is sufficient, in that it charges a conspiracy

3. SAME: overt act in another State.

in this State to commit the crime of cheating by false pretenses, yet the evidence does not support the charge, in that the acts which it is alleged the defendants conspired to commit were not a felony — that is, were not punishable by imprisonment in the penitentiary — in this State, and defendants were guilty of no offense. Counsel frankly concede that it was competent for the Legislature to make it a crime for persons to conspire in this State to commit a crime in another, yet they say that it has not in fact done so. The argument proceeds on the theory that the term " felony," when used in our statute, has a distinct and definite significance; that is to say, that it is a crime punishable by imprisonment in the penitentiary

of this State, and not in some other penitentiary. There is much force in this argument, and, if the statute merely made it a crime to conspire to commit a felony, the writer would be inclined to agree with defendants' contention. But the statute is much broader than this. It makes it a crime for persons to conspire to injure the business, property, or rights in property of another, and also recognizes the existence of common-law conspiracies by providing punishment therefor. Counsel say that cheating by false pretenses was not a crime at common law, which is undoubtedly true; but their conclusion that there was no such thing at common law as a conspiracy to cheat and defraud is not sound. It was a crime at common law to conspire to cheat and defraud, even without the use of false tokens, by means which were simply wrongful and unlawful, although not criminal. The logic of the cases is that it is the combination which constitutes the unlawful offense, and it was deemed immaterial that the cheat, or the false and fraudulent devices by which it was executed, would not be punishable as crimes, if unassociated with the conspiracy. The cases are fully collected in 8 Cyc., pages 630, 631. Among them we cite the following: *State v. Gannon,* 75 Conn. 206 (52 Atl. 730); *State v. Buchanan,* 5 Har. & J. 317, note (9 Am. Dec. 534); *Com. v. Hunt,* 4 Metc. (Mass.) 111 (38 Am. Dec. 346); *Twitchell v. Com.,* 9 Pa. 211; *State v. Cole,* 39 N. J. Law, 324; *Reg. v. Orman,* 14 Cox, C. C. 381; 1 Hawkins, P. C. 190, chapter 72; *Bradshaw v. Territory,* 3 Wash. Terr. 265 (14 Pac. 594); *People v. Clark,* 10 Mich. 310. Doubtless the Legislature intended to cover just such cases as this in the fore part of the section quoted. But whether it did or not, it recognized the continued existence of common-law conspiracies. That it was a conspiracy at common law to do what the defendants in this case were charged with doing is clear from the authorities already cited, and this is true although the overt acts may have been committed in another jurisdiction, or were not,

where committed, a crime at all. State v. Buchanan, *supra,* is one of the leading cases on this subject, and is a clear exposition of common-law conspiracies.

Under such a charge as was here made, it is sufficient to prove the conspiracy in this State, and the commission of the overt acts in another jurisdiction. *Ex parte Rogers,* 10 Tex. App. 655 (88 Am. Rep. 654); *Thompson v. State,* 106 Ala. 67 (17 So. 512). And in such cases it seems to be immaterial that the overt act did not constitute a crime in the foreign jurisdiction. This being true, it is also immaterial, so far as this point is concerned, whether the overt acts constituted a felony in this State, had they been committed here. We shall presume, of course — for it is the law — that, in the absence of proof to the contrary, the laws of the State of Missouri are the same as our own, and that the overt acts were a felony in that State. This, not for the purpose of determining the sufficiency of the proof alone, but also for objects which will presently appear.

Some States hold that in the absence of statute the common law as to conspiracy is in force in this country. See learned opinion of Chief Justice Shaw, in Com. v. Hunt, *supra,* and State v. Buchanan, *supra.* Generally speaking, we have no common-law crimes in this State, but the statute we have quoted expressly recognizes common-law conspiracies; and we must look to the common law for the definition of such offenses, and for the rules governing the same. *State v. Twogood,* 7 Iowa, 252. Our statute does not require the commission of an overt act, as in some States; and the common law obtains here, to the effect that proof of the overt act is unnecessary. Therefore it is unlawful at common law to conspire to commit unlawful acts in a foreign jurisdiction. See cases hitherto cited, and, in addition, *Dealy v. U. S.,* 152 U. S. 539 (14 Sup. Ct. 680, 38 L. Ed. 545); *Bloomer v. State,* 48 Md. 521; *In re Wolf* (D. C.) 27 Fed. 606.

The mere fact, then, that the overt acts in the instant

case were to be, and were, in fact, committed in Missouri, is of no consequence in this connection. We do not overlook the fact that it has been held in this jurisdiction that the means agreed to be used must not only be wrongful, but criminal as well. *State v. Jones,* 13 Iowa, 272; *State v. Stevens,* 30 Iowa, 391; *State v. Potter,* 28 Iowa, 392. That is to say, under our holdings, the object must be a criminal one. But to cheat by false pretenses or by false tokens is criminal in this State, and presumptively so in Missouri. Moreover, the acts which the defendants proposed to do were criminal in this State, and, as no proof that they were in fact accomplished was needed, the offense was complete here. In this connection we are considering the common-law crime of conspiracy, and are not dealing directly with the statutory offense of conspiracy with intent to commit a felony.

Whether or not an offense properly charged was committed must be determined primarily from defendants' acts and intent, as they existed here, where the alleged offense of conspiracy was committed. The doing of the acts which the defendants conspired to commit has a bearing upon the intent charged, or, in other words, upon their purposes and state of mind when the conspiracy was formed. They might have been acquitted of the overt acts in Missouri, and still have been convicted in this State of a conspiracy to do those very acts. There is no merit in defendants' position on this proposition.

IV. One William Barker was a witness for the State. On cross-examination he was asked if he had ever been convicted of a felony. He denied that he had been. In

**4. FORMER CONVICTION: identity of parties: sufficiency of proof.** due course defendants introduced a properly certified record of the conviction of one William S. Barker of a felony in the State of Colorado. The trial court held that there was not sufficient proof that William S. Barker was the same person as William Barker. Barker, the witness, on cross-examination tes-

tified that he had never gone by the name of William S. Barker, and that he was never tried or convicted of crime in the State of Colorado. The trial court held, as a matter of law, that there was such dissimilarity of names as that the transcript of conviction was inadmissible. In this we are constrained to hold there was error. In this State we have followed the great weight of authority to the effect that the middle initial is no part of one's name, and is ordinarily of no importance. This has been held in a great variety of cases. *State v. Bowman,* 78 Iowa, 519; *Porter v. Butterfield,* 116 Iowa, 731; *Fletcher v. Conly,* 2 G. Greene, 88, and cases cited. The defendant was required to prove the conviction by the record. Code, section 4613. When it produced a record showing the conviction of William or William S. Barker of a felony, it made out a *prima facie* showing for the admission of the evidence. *State v. McGuire,* 87 Mo. 642. It then became a question for the jury to determine from all the evidence whether or not the parties were the same. *Kimball v. Davis,* 19 Wend. 442; *State v. Kelsoe,* 76 Mo. 505. The mere fact that the witness said he had never gone by the name of William S. Barker, and also denied conviction in Colorado, is not conclusive on the proposition. If it were, then there can be no impeachment when the witness enters a denial. The testimony should have been admitted. The error was not cured in any way, and the presumption of prejudice is not rebutted.

V. The offense charged was conspiracy to cheat by false pretenses, and the trial court charged that the State must show that the means to be employed were such, if they

5. CONSPIRACY TO CHEAT BY FALSE PRE-TENCES: instructions.

had been successful, as would have amounted to the crime of obtaining money by false pretenses. The evidence as to overt acts tended to show that the actual crime committed by the defendants in pursuance of the conspiracy was larceny, in that the persons whom they intended to defraud did not part with or intend to part with anything more than the bare possession of

their property.    Both Gregory and Barker testified that they did not intend to part with the title to their property.    It must not be admitted, of course, that proof of the overt act was not necessary, and that proof of one act may, because of its similarity to another, tend to prove that other.    But this is by no means conclusive, and the ordinary rule is that a person intended to do that which he did in fact do.    But in view of the allegations of the indictment and the charge as given by the court, it was important that the crimes of larceny and of cheating by false pretenses be clearly distinguished.    That there is a distinction between the two is apparent, although they are in some respects similar in character.    The distinction is this:  If the false pretenses induce the owner to part with his property, intending to transfer both title and possession, the crime is cheating by false pretenses.    If, on the other hand, one by fraud, trick, or false pretense induces the owner to part merely with the possession of his property, there being no intent to pass the title, and the party who receives it took it with intent fraudulently to convert it to his own use, the crime is larceny. *State v. Edwards,* 51 W. Va. 220 (41 S. E. 429, 59 L. R. A. 465); *State v. Hall,* 76 Iowa, 85; *People v. Morse,* 99 N. Y. 662 (2 N. E. 45).    The distinction depends largely, if not wholly, upon the intent of the prosecutor.    *State v. Anderson,* 47 Iowa, 142; State v. Hall, *supra; People v. Rae,* 66 Cal. 423 (6 Pac. 1, 56 Am. Rep. 102); 1 Wharton, Criminal Law, section 1179; *Loomis v. People,* 67 N. Y. 329 (23 Am. Rep. 123).

Having charged as already indicated, the trial court undertook to define the crime of cheating by false pretenses, and, among other things, said that to make out the conspiracy it should be shown that the means to be used where such as, had they been successful, defendants would have been guilty of cheating by false pretenses.    It further charged that, if the false pretenses were such as to induce the prosecutors to indorse and turn over to defendants the absolute possession

and apparent ownership of certain drafts in order to settle an
assumed controversy, this would make out the crime of
cheating by false pretenses; and it would make no difference
in this respect even should it appear from the evidence that,
when the prosecutors parted with their drafts, they did not
intend to part with the title to the property. It further
instructed as follows: "If Gregory and Barker indorsed
the drafts and turned them over to Gibson, for the purpose
that Gibson might make a showing with them that he had
sufficient money in his hands to meet all the claims of
those who had deposited bets with him, this would be a loan
to Gibson to the extent that there might be a shortage,
if any, in the money in Gibson's hands, and, whatever may
have been Gregory's and Barker's thoughts at the time, it
would have been a conditional transfer of the title of said
drafts to Gibson to secure any shortage that might appear
in the money in his hands." In still another instruction
the trial court said: "And if the defendants agreed that
such representations should be made, and the same, or some
material part thereof, were false, and known by the defend-
ants to be false, and they agreed to make them, so that,
united with a promise to pay back the money, they might
induce Gregory and Barker to part with the title to their
money and drafts, or with the proceeds thereof, with the
apparent title, and with the intention on the part of the
defendants to defraud Gregory and Barker out of their
money, and such conspiracy by defendants was entered into
in this city, or some act was done by defendants in this city
in furtherance of such unlawful design, this would be suf-
ficient to make out the crime charged in this indictment."
In other instructions the court defined larceny, and said
that, if defendants conspired to obtain the property through
larceny, defendants would not be guilty. Larceny was
properly defined in these instructions. But, in the ones
to which we have referred, the crime of cheating by false
pretenses was not described. It is not the obtaining of the

apparent title which constitutes the crime, for possession of an indorsed draft alone gives an apparent title, no matter how that possession be obtained.   If the prosecutors did not intend to part with the title, but delivered the possession for a temporary purpose, and defendants took and fraudulently converted it, they were guilty of larceny, and not of the crime of cheating by false pretenses.    State v. Anderson, *supra; State v. Kube,* 20 Wis. 217 (91 Am. Dec. 390) ; *State v. Vickery,* 19 Tex. 326; *Com. v. Lannan,* 153 Mass. 287 (26 N. E. 858, 11 L. R. A. 450, 25 Am. St. Rep. 629) ; *Stimson v. People,* 43 Ill. 397 (which is closely in point) ; *Zink v. People,* 77 N. Y. 114 (33 Am. Rep. 589) ; *State v. Porter,* 25 W. Va. 685.    In view of these well-established rules, the instructions quoted cannot be approved.

For the evident purpose of avoiding the rule, announced in some States, that parties to an illegal transaction cannot complain, even in a criminal case, of a wrong committed by one upon the others which was involved in their original plan, or so connected therewith as to be incapable of divorcement, the prosecution in this case insisted that the money and property involved in the transactions complained of was not furnished for the purpose of being bet on a " fake foot race," but was obtained by defendants for a temporary purpose, and without the holders intending to pass the title thereto.    This being true, it was important, in view of the manner in which the case was presented to the jury, for the court to differentiate the offenses of larceny and cheating by false pretenses accurately and carefully.    This is conceded by the Attorney General, but he contends that the charges to which we have referred were correct as applied to the facts, and that this court should hold as a matter of law that the defendants did acquire the title or unqualified right of possession to the drafts in question.    This we cannot do, for the question was manifestly for the jury.

The fifth instruction asked by the defendants, which read in this wise, should have been given:    " If these de-

fendants conspired to induce Gregory and Barker to part with the posesssion of the things described in the indictment, or some or all of them, without purpose on the part of Gregory and Barker to part with the property in said things, and expecting their return, and the conspiracy included a felonious intent to deprive the owners of the goods; or if it was the purpose of the conspiracy to obtain the possession only by a trick, artifice, or false pretense, with felonious intent to convert what was obtained to their own use — that would be a conspiracy to commit larceny; and, if you find that such was the conspiracy, you must acquit the defendants." And we think that the seventh, reading as follows, should also have been given: " Should you find that the defendants conspired to induce Gregory and Barker to bet on a foot race, and to that end to place the thing described in the indictment, or some of them, in the hands of a stakeholder, you are instructed that this would not be a conspiracy to obtain the title to the property; and, if you find that such was the conspiracy, you must acquit the defendants." As supporting this last instruction, see State v. Anderson, *supra*; *Shakleford v. Ward*, 36 Am. Dec. 435.

VI. We hardly deem it necessary to say that one indicted for a conspiracy to cheat by false pretenses may not

6. VARIANCE.

on that charge be convicted of a conspiracy to commit larceny. But see *Grunson v. State*, 89 Ind. 535 (46 Am. Rep. 178.)

VII. Continuing the same line of argument, defendants' counsel say that there was no testimony to justify the verdict, because the proof shows that the overt act committed

7. SAME: overt act; intent.

by the defendants was larceny, and not cheating by false pretenses. If the overt act were the gist of the offense, there might, perhaps, be some justification for the claim. But this is not true, and we are in danger of confusing the overt act with the crime charged. Of course, the overt act is admissible to show the intent of the alleged conspirators; but it is not conclusive. The en-

tire evidence must be considered in determining the question as to the nature of the conspiracy, and it was for the jury to determine just what it was. There can, of course, be no conviction for any other offense than that named and charged in the indictment, but there was testimony which, if believed by a jury, would have justified a conviction.

Some other matters are argued by counsel, but, as they are not likely to arise upon a retrial, we do not consider them. For the errors pointed out, the judgment must be, and it is, reversed, and the case is remanded for a retrial.— *Reversed* and *remanded.*