STATE OF IOWA v. ELI HARDIN and WILL CARTER, Appellants.

**Conspiracy:** PREVENTING WITNESSES FROM ATTENDING TRIAL. A conspiracy to prevent witnesses from attending a trial, by inducing and escorting them to another State and maintaining them there, was an indictable offense at the common law, and is punishable under the statute defining the crime of conspiracy.

**Same:** INDICTMENT: PROOF: VARIANCE. The allegation in an indictment for conspiracy to prevent witnesses from attending the trial that they were legally subpoenaed was not material, and was only by way of inducement to the substance of the charge; and any mere variance between the allegation and proof, that a copy of the subpoena had been placed in the hands of each witness and that each understood he was to attend court at the time and place stated therein, was immaterial; as the offense consisted in inducing the witnesses to disregard the order of court of which they were advised.

**Same:** MALICIOUS INTENT. Where as in this case the conspiracy to prevent witnesses from attending the trial must have been formed with a malicious intent, an instruction that it must appear that in forming the plan defendants intended to obstruct the administration of justice was sufficient, though the jury were not expressly told that such intent must have been malicious.

**Evidence:** PRIVILEGE OF WITNESS: REMARKS OF COURT AND COUNSEL: PREJUDICE. It is no part of the duty of counsel for an accused to advise a witness for the State of his privilege; and where an attempt' was made to apprise a witness when called to the stand that the testimony he might give might be used to convict him of a crime, the remarks of the county attorney that he would take care of the witness, and of the court that the privilege was that of the witness and not of counsel, were not prejudicial.

*Appeal from Polk District Court.*—HON. W. H. McHENRY,
Judge.

WEDNESDAY, APRIL 7, 1909.

REHEARING DENIED, TUESDAY, OCTOBER 26, 1909.

THE defendants were convicted of the crime of con-
spiracy, and appeal.—*Affirmed.*

*Bowen & Brockett,* for appellants.

*H. W. Byers,* Attorney-General, *Charles W. Lyon,*
Assistant Attorney-General and *Lawrence De Graff,* County
Attorney, for the State.

LADD, J.—One S. E. Carter had been indicted, and
the cause was assigned for trial December 2, 1907. Some
time prior thereto, November 25, 1907, the county attorney
caused notice to be served on said Carter that Jack Blades
and Wm. Stallsworth would be called as witnesses, and
subpoenas were issued for their appearance to give testi-
mony. The subpoena for Blades requiring him to attend
court December 2 as a witness was left with his wife
on November 28 or 29, and upon its receipt he read it.
The subpoena requiring the attendance of Wm. Stalls-
worth was placed in the hands of his brother, who de-
livered him a copy November 29, and made return thereon.
Both Blades and Stallsworth were aware their attendance
as witnesses was exacted at the trial of Carter at two
o'clock on the day named in the subpoenas, but neither of
them responded. On the contrary, in pursuance of an ar-
rangement between the defendants, Will Carter and Eli
Hardin, the latter escorted Blades and Stallsworth to St.
Joe, Mo., and entertained them, beyond the jurisdiction
of the court, at the expense of the former, until the trial

of S. E. Carter had terminated. That the defendants con-
cocted this plan of preventing the witnesses' attendance
on said trial, and executed it, was conclusively proven;
and, though it is earnestly contended that Hardin was
not aware of the issuance of the subpoenas, the circum-
stances were such that the jury might well have found
otherwise. Several errors are assigned which may be con-
sidered in the order presented.

I. The statutes of this State do not denounce the
inducing or taking of witnesses in violation of the com-
mands of a subpoena beyond the jurisdiction of the court
as a crime, and as the means adopted were
not unlawful, counsel for appellants contend
that the crime of conspiracy was neither
charged in the indictment, nor proven by
the evidence adduced on the trial. Whether the position
is sound necessarily depends on the construction to be
given our statute defining the crime of conspiracy: "If
any two or more persons conspire or confederate together
with the fraudulent or malicious intent wrongfully to in-
jure the person, character, business, property or rights in
property of another or to do any illegal act injurious to
the public trade, health, morals or police, or to the ad-
ministration of public justice, or to commit any felony,
they are guilty of a conspiracy, and every such offender
and every person who is convicted of a conspiracy at
common law, shall be imprisoned in the penitentiary not
more than three years." Certainly no warrant for the posi-
tion of counsel is to be found in the language quoted. In
denouncing a penalty against conspiracies at common law
the notion that the object of the combination or the means
to attain it necessarily must be criminal under our statutes
is distinctly refuted. Moreover, the definition in its scope
seems to cover practically all the subjects of conspiracy
at the common law. And in *State v. Loser*, 132 Iowa,
419, it was held that the above statute "expressly recog-

nizes common-law conspiracies; and we must look to the common law for the definition of such offenses, and for the rules governing the same," and "to conspire to commit unlawful acts in a foreign jurisdiction," as this was a crime at common law and was declared to be such under the section of the Code quoted. That a combination of two or more to commit an unlawful act not criminal, or to commit a lawful act by means which were unlawful, though not criminal, might constitute a criminal conspiracy at the common law seems to be conceded by those decisions which most strenuously combat the propriety of the rule.

In *State v. Rickey,* 9 N. J. Law, 293, it was "laid down as a settled rule that an indictment will not lie for a conspiracy to commit a civil injury of any description that is not in itself an indictable offense," but, later, in *State v. Norton,* 3 N. J. Law, 33, that case was distinctly overruled, the court saying that:

"The great weight of authority, the adjudged cases no less than the most approved elementary writers, sustain the position that a conspiracy to defraud individuals or a corporation of their property may in itself constitute an indictable offense, though the act done, or proposed to be done, in pursuance of the conspiracy, be not in itself indictable." To the same effect see *State v. Younger,* 12 N. C. 357 (17 Am. Dec. 571), where a combination of "two to cheat a third person by making him drunk, and playing falsely at cards with him," was held to be indictable, for that such combination to do an unlawful act, or one prejudicial to another, was indictable at common law. In *Commonwealth v. Hunt,* 4 Metc. (Mass.), 111 (38 Am. Dec. 346), Chief Justice Shaw, after a review of the English cases, reached the conclusion that, "a conspiracy must be a combination of two or more persons by some concerted action to accomplish some criminal deed, unlawful purpose, or to accomplish some pur-

pose not itself criminal, but unlawful, by criminal or unlawful means. We use the terms 'criminal' or 'unlawful' because it is manifest that many acts are unlawful which are not punishable by indictment or other public prosecution, and yet there is no doubt, we think, that a combination to do them would be an unlawful conspiracy, and punishable by indictment. Of this character was a conspiracy to cheat by false pretenses, without false tokens, when a cheat by false pretenses only, by a single person, was not a punishable offense."

Other instances are mentioned in the opinion.

In *State v. Gannon*, 75 Conn. 206 (52 Atl. 727), the theory on which the law proceeds is well stated: "Two elements, therefore, enter into the crime of conspiracy: That of wrongful combination, and that of criminal attempt. The combination of numbers to accomplish a wrongful act has a special danger to public morals, rights of property, and public peace, and for this reason is treated as an independent offense whenever it is the first step toward the commission of the crime. It is then an attempt to commit a crime; but a joint attempt to commit a crime cannot be punished as a conspiracy, unless there is a combination of such a nature as to increase the danger to the public from the attempt. It is the special danger to the public from wrongful acts that are accomplished through the force of combination which has induced the courts to treat an attempt to accomplish such acts through the force of combination as a criminal attempt, although the acts may not be criminal when committed or attempted otherwise than through the wrongful combination for that purpose." *State v. Buchanan*, 5 Har. & J. (Md.), 317 (9 Am. Dec. 534), is a leading case in this country, and, after an exhaustive review of the cases, reached the conclusion that, as stated by Mr. Carson in Wright on Criminal Conspiracies, 98:

(1) A conspiracy to do an act that is criminal *per se* is an indictable offense at common law.   (2) A conspiracy to do an act, in itself innocent, by means which are indictable is indictable at common law.   (3) An indictment will also lie at common law:   (a) For a conspiracy to do an act not illegal nor punishable if done by an individual, but immoral only;   (b) for a conspiracy to do an act neither illegal nor immoral in an individual, but to effect a purpose which has a tendency to prejudice the public;   (c) for a conspiracy to extort money from· another, or to injure his reputation by means not indictable if practiced by an individual, as by verbal defamation, and that, too, whether it be to charge him with an indictable offense or not;   (d) for a conspiracy to cheat and defraud a third person, accomplished by means of an act which would not in law amount to an indictable cheat, if effected by an individual;   (e) for a malicious conspiracy to impoverish or ruin a person in his trade or profession;   (f) for a conspiracy to defraud a third person by means of an act not *per se* unlawful, and though no person be injured thereby;   (g) for a bare conspiracy to cheat and defraud a third person, though the means of effecting it should not be determined on at the time.

See, also, as sustaining this view, *State v. Burnham,* 15 N. H. 396; *Smith v. People,* 25 Ill. 17 (76 Am. Dec. 780); *State v. Cardoza,* 11 S. C. 195; 2 Bishop on Criminal Law, sections 178, 181; McClain's Criminal Law, section 594.

There are authorities to the contrary, however, which, notwithstanding the convincing character of the decisions referred to, and others too numerous for citation, have deduced the rule that "an indictable conspiracy must be a corrupt confederation to. promote an evil purpose in some degree criminal, or to effect some wrongful end by means having some degree of criminality."   See 3 Greenl. Evidence (13th Ed.) section 90; *Conn. v. Eastman,* 1 Cush. (Mass.) 189, (48 Am. Dec. 596); *Alderman v. People,* 4 Mich. 414, (69 Am. Dec. 321); *State v. Keach,* 40 Vt.

113; *State v. Ripley,* 31 Me. 386. This was the view expressed in *State v. Jones,* 13 Iowa, 269, where the indictment charged a combination to cheat and defraud one Durham of a large sum of money by impleading him in a civil action, and attempting to procure a judgment on a fictitious instrument. The court held the indictment bad, in that the words "cheat and defraud" did not alone imply a crime at common law or under the statute unless accompanied by some false pretenses or tokens, and that the means alleged were not criminal, declaring that:

It should appear on the face of the indictment that the object of the conspiracy is a criminal one, or else, if 'the purpose thus disclosed does not import a crime, then other facts should be alleged and set forth, so as to show that the means to be employed are criminal, thereby withdrawing the crime of conspiracy from the limitless field of wrongful acts, where the old authorities had allowed it to go, to the more circumscribed range of the Criminal Code, either as a means or an end. This brings both elements of this compound offense, to wit, the combination and the injury contemplated under the clear and more certain control of the courts.

It is said, in *State v. Potter,* 28 Iowa, 556, that the above conclusion was reached after a full examination of the English and American authorities. If so, the opinion does not disclose the fact, for of the cases cited *Hartman v. Com.,* 5 Pa. 60, announces no such doctrine, *State v. Rickey,* 9 N. J. Law, 293, had been overruled, and *State v. Burnham,* 15 N. H. 396, is directly to the contrary, while *Lambert v. People,* 9 Cow. (N. Y.) 578, was determined by the casting vote of the president of the court. In *State v. Potter, supra,* the indictment charged a combination to defeat the enforcement of the prohibitory law with many and various unlawful means, and it was held bad for not more specifically specifying the means, the court observing that "to do an act that is not an offense,

by means that are not unlawful, cannot constitute crime. Neither can a combination of two or more to do such act in the same manner be criminal. If such a combination would amount to an offense, we would have a strange and absurd result of an intention being criminal when the act intended, if done would be no offense. In the case, then, of the conspiracy to do an act that is not criminal the gist of the offense is the illegal means. It is plain under the statutory provisions above cited that the acts constituting these means which are the particular circumstances of the offense must be specifically charged and set out." The rule as announced in the *Jones* case has been repeated several times since, though in no instance was its adoption essential to a decision. See *State v. Stevens,* 30 Iowa, 391; *State v. Savoge,* 48 Iowa, 562; *State v. Eno,* 131 Iowa, 619. In *State v. Loser,* 132 Iowa, 419, attention was directed to great weight of authority to the contrary. See, also, the review of English and American authorities in Wright's Criminal Conspiracies.

The design of this discussion has not been to discredit previous decisions of this court, save in pointing out the narrowness of the holdings, and to say that, in view of the authorities generally, the doctrine approved therein should not be extended by holding that the end or means of a combination must be indictable under the statutes of this State in order to constitute a crime. Such was not the conclusion in the *Jones* case, for the above statute was not alluded to, and attention was especially directed to the fact that the object of the alleged combination was not criminal "neither at common law nor under our statutes." Nor have the decisions since touched the subject until *State v. Loser, supra,* where it was distinctly asserted that a criminal conspiracy at the common law was such under our statute. At the common law to spirit away witnesses, or in some other manner prevent their attendance on court, was an indictable offense. *State v. Keyes,*

8 Vt. 57, (30 Am. Dec. 450); *State v. Carpenter,* 20 Vt. 9; *Com. v. Reynolds,* 14 Gray (Mass.) 87, (74 Am. Dec. 665); *Martin v. State,* 28 Ala. 71; *State v. Ames,* 64 Me. 386. In the first of the above cases, the court said, speaking through Redfield, J.:

The essence of the offense is obstructing the due course of justice. This has always been held indictable as a misdemeanor at common law. Whether the witness had been served with a subpoena or not cannot be esteemed very material. The effect of the act and intent of the offender is the same, whether the witness has been, or is about to be, served with a subpoena, or is about to attend in obedience to a voluntary promise. Any attempt, in either case, to hinder his attendance is equally criminal, and equally merits punishment. . . . The question is not whether the witness has been guilty of a contempt in disobeying the process of the court, but whether there has been a corrupt attempt to obstruct the due course of public justice by 'spiriting' away or preventing the attendance of a witness. If the person induced to absent himself knew of his being a witness, and was induced to absent himself, the offense was complete in him. If the respondent knew of his being a witness, and about to be compelled, in due course of law, to attend the trial, and endeavored to dissuade and hinder him therefrom, in the language of the indictment, his offense is complete.

A conspiracy thus to injure or obstruct the administration of justice was an indictable offense at the common law. See *State v. Ripley,* 31 Me. 386; *State v. De Witt,* 2 Hill (S. C.) 282, (27 Am. Dec. 371); *State v. Harris,* 38 Iowa, 242. And a conspiracy to persuade and prevent witnesses from attending a trial was also a punishable offense, and is within the definition of the statute quoted. *Rex v. Steventon,* 2 East, 362. It follows that the court rightly held the facts charged to constitute criminal conspiracy.

II. The indictment alleged that the witnesses had

been "duly and legally subpoenaed," and it is said that, as they were not served by delivering a copy of the sub-

**2. SAME: indictment: proof: variance.** poena and shown the original, there was a fatal variance between the indictment and the proof. Section 5493 of the Code declares that "service is made by delivering a copy and showing the original." The evidence disclosed that a copy of the subpoena duly issued had been placed in the hands of each witness, and that each understood that he was required to attend court as a witness at the time and place indicated therein. Such information was the prime object of the service, and it was not open to the accused to draw nice distinctions as to the sufficiency of service, especially as, save for the allegation in the indictment, it was immaterial whether the witnesses had been subpoenaed at all. Even though the service may have been defective, the accused were transgressing the law in combining to induce the witnesses to disregard the command of the court, of which said witnesses were fully advised. The allegation as to the legality of the service of the subpoenas was by way of inducement to the substance of the charge, and no more was necessary to be proven than essential to make out the offense alleged. See *State v. Judd,* 132 Iowa, 296; *Commonwealth v. Reynolds, supra.*

III. The combination, if formed, must have been with a fraudulent or malicious intent. Appellants contend that such a finding was not exacted by the instruc-

**3. SAME: malicious intent.** tions, for that, though the jury was advised that it must appear that defendants in concocting the plan intended to obstruct the administration of justice, they were not told that such intention must have been malicious. Had any explanation been given inconsistent with an evil motive, there might be some ground for this criticism. But none was offered, and the intent, if any there was, was to obstruct the administration of justice by spiriting away the witnesses so

as to prevent them from giving testimony. This character-
ization of the intent, in the light of the evidence adduced,
stamped it as malicious, and such was the purport of the
instruction.

IV. Blades was called as a witness for the State.
After his examination had begun, counsel for defendants
said: "If the court please, I do not know whether this

<div style="margin-left:2em;font-variant:small-caps;">4. EVIDENCE:<br>privilege of<br>witness: re-<br>marks of court<br>and counsel:<br>prejudice.</div>

witness has been apprised that the testimony
he is giving, or may give, might be used
to convict him of—" Here the county at-
torney interrupted with the assertion: "I
will take care of the witness. You don't need to make
any pleas of that kind." Counsel objected to this state-
ment, and submitted that it "was proper practice for any
one connected with the case to call the witness' attention
to such things." The court: "That is the privilege of
the witness, not of either counsel. It is not your privi-
lege at all to put anything into the head of the witness.
I will take care of the witness if he gets into trouble."
Appellants insist that this was prejudicial, but how is not
explained. Certainly it was no part of counsel's duty to
advise the witness. Wigmore on Evidence, section 2196.
His suggestion could not well have had a purpose other
than that of obviating the introduction of the witness' testi-
mony. The court did not err in suppressing the effort, and
the manner of doing so cannot be said to have been pre-
judicial. Some other rulings are criticised, but none re-
quire discussion in their approval.

The record is without error, and the judgment is
*affirmed.*