## Commonwealth v. Leatherman

*Robert H. Griffith* and *Frank B. Boyle*, for Commonwealth.

*Arthur D. Weeks*, for defendant.

ATKINS, P. J., August 7, 1961.—In this case, Ruth O. Rinker and Frances Leatherman were jointly indicted for the offense, conspiracy to do an unlawful act. The unlawful act alleged was to furnish false information for a birth certificate for a child about to be born to Ruth O. Rinker. The furnishing of such information is a misdemeanor, under the provisions of the Act of June 29, 1953, P. L. 304, sec. 902, 35 PS §450.902. Ruth O. Rinker entered a plea of guilty to the indictment and testified for the Commonwealth

at the trial of Frances Leatherman, who was found guilty by a jury.

Frances Leatherman has filed a motion for new trial. It is contended that the evidence does not sustain the verdict. From the evidence viewed in the light of the jury's verdict, we can conclude that the jury found the following facts:

Early in 1959, Ruth O. Rinker, then pregnant, and residing at Hampton, Adams County, Pennsylvania, learned that Mrs. Frances Leatherman of Thurmont, Maryland, was desirous of obtaining a baby. With this knowledge Miss Rinker visited Mrs. Leatherman. They discussed the possibility of her staying at the Leatherman home until the baby was born, but decided against this because the house had no central heating. It was then decided that the birth should take place in a hospital. Mrs. Leatherman told Miss Rinker to use the name of Frances Leatherman "all the way through", and information concerning the vital statistics of Frances Leatherman for use at the hospital was provided by Mrs. Leatherman and written out for Miss Rinker by Mrs. Dee Leatherman, in Frances Leatherman's presence.

Subsequently, Miss Rinker consulted a physician at which time she used the name of Frances Leatherman. When she paid the physician for his services, she paid him by check given her by Frances Leatherman in which the physician was the payee.

She entered the West Side Osteopathic Hospital where, on June 6, 1959, a female child was born to her. She named the child Johnnie Dee Leatherman. At the hospital she gave her name as Frances Leatherman and used the vital statistics previously given her by Frances Leatherman. The birth certificate for the child was prepared from this information and was given by the hospital authorities to Miss Rinker, who in turn

gave it to Mrs. Leatherman prior to the time she left the hospital. When Miss Rinker was discharged from the hospital, Frances Leatherman, in company with Mrs. Dee Leatherman and the latter's husband, Kenneth Leatherman, called at the hospital for her and the baby. Frances Leatherman paid the hospital bill, which was made out in the name of Frances Leatherman, and received the receipted bill after paying it. The four adults left the hospital together with the baby and drove to Miss Rinker's home where she left them. The others proceeded on their way with the baby and the birth certificate. Frances Leatherman has had the baby ever since. In none of the conversations between these two defendants was there ever any express mention made of the birth certificate. Mrs. Leatherman denied that she gave much of the information about her vital statistics to Miss Rinker She did state, however, that she knew Miss Rinker was using the name of Frances Leatherman at the hospital. She further testified that she knew nothing about birth certificates and did not know that a birth certificate would be in any way involved. This raised a question of fact for the jury which was resolved by the jury against defendant.

Defendant argues that since the Commonwealth did not prove an express agreement as to the birth certificate this evidence does not sustain the charge. This contention is answered by the Superior Court in Commonwealth v. Gaines, 167 Pa. Superior Ct. 485, 487, where the court said:

"The elements of conspiracy to do an unlawful act are a combination of two or more persons, with criminal intent or corrupt motive, to do a criminal or unlawful act, or an act not in itself unlawful, by criminal or unlawful means. Com. v. Kirk, 141 Pa. Superior Ct. 123, 14 A. 2d 914. The gist of the offense is the unlawful confederation. Com. v. Weldon, 159 Pa.

Superior Ct. 447, 48 A. 2d 98. 'The Commonwealth was not required to prove an express agreement. It is very rare that a formal or explicit agreement can be proved in a conspiracy case.' Com. v. Weiner, 148 Pa. Superior Ct. 577, 581, 25 A. 2d 844. Although no overt act is needed to sustain a charge of conspiracy (Com. v. Weldon, supra) overt acts are evidence from which a conspiracy can be inferred. Com. v. Kelson, 134 Pa. Superior Ct. 132, 3 A. 2d 933; Com. v. Rosen, 141 Pa. Superior Ct. 272, 14 A. 2d 833. '. . . the offense is complete . . . the moment the combination is formed. The overt acts are not part of the crime charged; they are merely the evidence of it; the means by which the Commonwealth is enabled to prove the conspiracy itself. . . . The fact of the combination is almost always inferred by the jury from the acts, the overt acts of the parties, as direct evidence in the shape of declarations can seldom be shown.' Com. v. McHale, 97 Pa. 397, 405."

Defendant next contends that she cannot be guilty of conspiracy to furnish false information for this birth certificate; first, because she did not know the information was to be used for that purpose; and second, that she did not know that the furnishing of false information for that purpose was a criminal act and, therefore, she could not have had a criminal intent.

The first of these points raised a question of fact for the jury. As pointed out, no express mention of birth certificate was made between these defendants. On the other hand, there was testimony that she had offered use of her name "all the way through." Also she did receive a birth certificate for this child from Miss Rinker at the hospital before they left with the baby. This certificate shows the surname of the baby was Leatherman. There was no evidence that this came as any surprise to her or that she took any steps to correct the apparent error. From all the evidence, the

jury was justified in arriving at the conclusion that she was aware of the uses to which this false information was to be put. As to the second of these points, we call attention to the statement of the Superior Court in Commonwealth v. Mittelman, 154 Pa. Superior Ct. 572, at page 582, where the court said: " '. . . if there be a direct intention that a crime should be committed, whether it be a crime at common law or by statute, the corrupt motive or criminal intent is necessarily present, for there can be no innocent motive in a combination entered into to commit a crime.' "

Defendant attempts to draw a distinction with regard to the question of intent between conspiracy to commit crimes that are *malum in se* and those that are *malum prohibitum*. We have found no Pennsylvania case drawing such a distinction. As the Superior Court goes on to point out in Commonwealth v. Mittelman, supra, there was a distinction drawn, with regard to the matter of intent, between conspiracy to commit a crime and conspiracy to do an unlawful act, not criminal in nature, but nothing is said there as to any distinction involving different criminal acts. On the general question of intent, defendant relies on Commonwealth v. Gormley, 78 Pa. Superior Ct. 294, where the lower court had refused defendant's offer of evidence on the question of his intent, and the Superior Court reversed, holding that defendant should have been permitted to give evidence intended to show an absence of fraudulent intent. Defendant has apparently overlooked the fact that this case was again before the Superior Court after conviction at the second trial. There the court in 78 Pa. Superior Ct. 296, 297, said: "Where the Commonwealth produces testimony showing a combination or agreement on the part of two or more defendants to commit a crime or misdemeanor, as charged in the indictment, it has made out a case sufficient to go to the jury. It need not go fur-

ther and prove affirmatively that the intent was criminal; that may be inferred by the jury from the nature of the combination and its criminal object: 5 R. C. L. 1066, 1072. The defendants may introduce evidence tending to show the innocence of their motive or intent, but the jury may convict them without other evidence of their intent than may be inferred from their conspiring to commit a crime. The unlawful act which may be the subject of the criminal conspiracy is not necessarily a criminal act, (State v. Hardin, 144 Iowa 264, 120 N. W. 470, 471), and there may be cases where it is incumbent on the prosecution to produce evidence in proof of the guilty intent of the parties with reference to such unlawful act, but where the conspiracy is to commit a crime or misdemeanor, proof that the parties conspired together to commit it is all that is necessary to support a conviction."

We consider the above statements of the Superior Court to be a complete answer to defendant's contention regarding intent.

Defendant next objects to the charge of the court. No exception, general or special, was taken to the charge. Nor were any requests made for any clarification of any matters covered by the court in the charge, nor for the court to charge on additional matters when the court asked counsel if they had any requests. Only basic and fundamental errors in a charge can be considered where only a general exception is taken to the charge: Commonwealth v. Eberhardt, 164 Pa. Superior Ct. 591. Here, as indicated, no exception was taken. But, notwithstanding this, we have reviewed the charge and found no fundamental error. In this connection, counsel has argued that the court should have charged the jury that they were required to find a specific criminal intent, by finding that there was express knowledge on the part of defendant that the furnishing of false information under these circumstances

was in fact criminal. Our examination of the charge discloses that it is in accord with the law as set forth in the cases previously referred to.

Defendant's counsel has also argued that the comments of the court concerning the failure of the Commonwealth to call a witness whose name was not endorsed on the bill of indictment were prejudicial, but has cited no authority in support of his contention in this regard. We feel that this point merits no further discussion.

A review of the trial record shows that defendant was fairly tried and represented by counsel, at the trial, who fully protected her rights and competently presented her defense. Accordingly, we will enter this order:

And now, August 7, 1961, it is ordered, adjudged and decreed that the motion of Frances Leatherman for a new trial be and is hereby refused and dismissed, and defendant is directed to appear for sentence on Monday, August 28, 1961, at 9:00 A.M., E. S. T.