[Crim. No. 2248. First Dist., Div. Two. Jan. 13, 1943.]

THE PEOPLE, Respondent, v. WALTER LAUTEN-SCHLAGER, Appellant.

Vincent Surr and Morgan V. Spicer for Appellant.

Earl Warren, Attorney General, and Charles W. Johnson, Deputy Attorney General, for Respondent.

SPENCE, J.—Two separate informations were filed against defendant, each charging him with the crime of grand theft. Defendant entered a plea of not guilty to the charge set forth in each information. The two actions were consolidated and were tried before a jury. In action 33697, the jury returned a verdict finding defendant guilty of petit theft. Judgment was entered sentencing defendant to six months in the county jail but the execution of the sentence was suspended. In action 33698, the jury returned a verdict finding defendant guilty of grand theft. Judgment was entered sentencing defendant to San Quentin. In each of said actions, defendant's motion for a new trial and his motion for probation were denied. Defendant took an appeal in each action from the judgment, from the order denying his motion for new trial and from the order denying his motion for probation. These appeals are presented upon a single transcript and a single set of briefs. ▮ As the orders denying defendant's motions for probation are not appealable orders (*People* v. *Brooks,* 140 Cal.App. 480 [35 P.2d 583]), the purported appeals from said orders will be hereinafter dismissed.

*Appeal in Action 33698.*

In this action, it was charged that on or about July 19, 1940 defendant unlawfully took the property of Lora Grove, consisting of money in the sum of $500. The transaction out of which the charge arose was a loan of $500 in connection with a mining venture of the defendant.

Defendant had known Mrs. Grove for about a year prior to July 19, 1940. Mrs. Grove knew that defendant was interested in mining and she herself had invested several thousand dollars in a mine before she had become acquainted with the defendant. On one occasion defendant had driven Mrs. Grove and her husband on a trip into the mining counties of this state where they looked over some mines. Prior to the making of the $500 loan, Mrs. Grove had made several small loans to defendant. At the time the $500 loan was made defendant was indebted to Mrs. Grove in the sum of about $200.

Mrs. Grove testified that defendant came out to see her regarding the $500 loan in July, 1940; that "He came out there and he said he had a proposition, a mining proposition on hand and he needed $500 to pay for the corporation papers. He had to get those out. . . . He said he had to get those out, and he had to have some money to pay the attorney, and for other corporation business. I don't know just what that all is, so he said he had to have some money, and I asked him how much he had to have and he said $500. I said I haven't money, and he said he had some people that were taking over this mine and they were there with money, and I said, 'Why don't you wait until they take it over and pay the lawyer then.' He said, 'Well you can't always let people know you haven't any money.' He thought the proposition wouldn't go through if they found that out. He said if I would only let him have $500 for a short time, for a week— he said he would pay me back in a week, anyway; that he would get the proposition over and he would pay me back all that he owed me. . . . He said something about he would give me extra money if I would let him have the money then, because he needed it so badly, and I told him I was not interested in any extra money, only I was interested in getting my own money back. . . . Q. Did he tell you how much extra money? A. No, he didn't say how much. Q. In other words, in the conversation at the house he said he was going to give you back the $500 and all the money he

owed you, which you took to mean approximately $200, and also some extra money for giving it to him, is that right? A. Yes." Mrs. Grove further testified that she thereupon agreed to lend defendant the money; that she accompanied defendant to the bank where she withdrew the $500 and delivered it to him; that after giving the $500 to defendant, he gave her a paper acknowledging receipt of the $500 for use in connection with the DuBarry Mining Co. and stating that she would be "on the board of directors as vice president until one thousand dollars had been returned to her, and also 2500 shares of stock," and that she would withdraw from the board of directors "as soon as the other people put up their money." She further testified, "He thought that would be a bonus for the loan of the money, or getting the money. Q. In other words, you were to be paid $300 for accommodating him, is that the idea? A. Yes. Q. For giving him the use of your money? A. That is what I supposed he meant." She further testified that she never got the $500 loan or any part of it back but that she thereafter made other small loans to defendant, all but one of which small loans were repaid; that "he would borrow $10 and then $5, and then $10 again, and he paid me back all but the last $10 he got."

■ It is thus apparent that there were several loan transactions between the parties and that the $500 transaction in July, 1940, which is the basis of the charge here, was but one of these several loan transactions. Such transactions ordinarily create only civil rights and obligations and it is only where the evidence is sufficient to show larceny by trick and device or the obtaining of money under false pretenses that a borrower may be held criminally liable. (*People* v. *Cook*, 10 Cal.App.2d 54 [51 P.2d 169]; *People* v. *Von Badenthal*, 8 Cal.App.2d 404 [48 P.2d 82]; *In re Clark*, 34 Cal.App. 440 [167 P. 1143]; *People* v. *Rae*, 66 Cal. 423 [6 P. 1].)

■ Defendant contends that the evidence here was insufficient for that purpose and, in our opinion, this contention must be sustained.

The main representation made by defendant to Mrs. Grove was that "he had a mining proposition on hand" and that he needed $500 to be used in an endeavor to work out a deal with certain prospective investors. He did not represent to Mrs. Grove that he had any definite agreement with any prospective investor but, on the contrary, expressed ap-

prehension that "the proposition wouldn't go through." The undisputed evidence shows that defendant was interested in the DuBarry mine and was operating the same; that he was dealing with prospective investors with respect to that mine; that he was intending to form and was going through the process of forming a corporation in connection with the proposed deal; that he did need money for these purposes; and that all of the $500 borrowed from Mrs. Grove and some of the other money borrowed from her together with a considerable amount of his own money was used for these purposes. While it is true that the proposed deal was never consummated because the prospective investors did not see fit to enter into it, and the proposed incorporation was therefore never actually completed, we find no evidence to show any false representation or trick or device used by defendant in obtaining the $500 loan or to show any diversion of the money borrowed to uses other than uses stated by defendant to Mrs. Grove at the time the loan was made. Mrs. Grove never complained of any claimed false representation or of any claimed wrongful diversion by defendant of the $500 at any time. Her sole complaint appears to have been that she was not repaid as promised. Mrs. Grove subsequently accepted a $500 note and a $200 note from defendant as evidence of his indebtedness to her and did not cause his arrest until January, 1942, being a year and a half after she had loaned the $500 to defendant. It was stipulated upon the trial that defendant was without funds with which to repay the loan.

As we view the record, it presents nothing more than a case in which the defendant, who was well known to the complaining witness and who had previously borrowed money from her, borrowed the further sum of $500 from her in the hope that the money would assist him in consummating a mining deal with prospective purchasers thereby enabling him to repay all that he owed to the complaining witnesses together with a bonus and to make some money for himself. Neither his hope nor the hope of the complaining witness was realized, but, in the absence of any fraudulent representation or any trick or device used by defendant in obtaining the loan, his mere failure to pay his indebtedness as promised cannot justify his imprisonment. We therefore conclude that the judgment and order denying defendant's motion for a new trial in action numbered 33698 must be reversed.

### Appeal in Action 33697.

█ In this action it was charged that on or about October 27, 1941, defendant unlawfully took the property of F. W. Gray, consisting of money in the sum of $700. As above indicated, the jury found defendant guilty of petit theft and the court sentenced defendant to six months in the county jail but suspended the execution of the sentence.

In the opening brief, it is said, "The judge has dealt lightly with such verdict, entering sentence for six months, and at the same time suspended it. Therefore, liberty is not at stake. The appellate court is rushed to death. The attorneys for the accused are paying their own printing bills. Why clutter up the records?" Nothing more is said in the opening brief concerning this appeal except to make a suggestion that respondent might enter into a stipulation that "In the event that our briefs in the appeal from #33698 result in a reversal in the Grove case, then that a reversal follow also in action 33697, the Gray case; otherwise not." In the brief of the attorney general it is stated, "Counsel for respondent is, of course, without authority to enter into any stipulation for a reversal of this judgment, and must therefore refuse to accede to appellant's suggestion." In defendant's reply brief, no further mention is made of this appeal.

As defendant has not argued or even suggested any point which would justify a reversal of the judgment or order denying his motion for a new trial in action 33697, there is no duty resting upon this court to search the record in an endeavor to find error in the proceedings. Under such circumstances, it is appropriate to order an affirmance.

In action 33697, the appeal from the order denying defendant's motion for probation is dismissed and the judgment and order denying defendant's motion for a new trial are affirmed. In action 33698, the appeal from the order denying defendant's motion for probation is dismissed; the judgment and order denying defendant's motion for a new trial are reversed, and it is further ordered that defendant be discharged from custody.

Nourse, P. J., and Sturtevant, J., concurred.

Reporter's Note: On January 14, 1943, the judgment was modified to read as above.